**HAIMBAUGH LANDSCAPING, INC., Appellant (Plaintiff),**

v.

**Lawrence A. JEGEN, III, and, Janet M. Jegen, Appellees/Cross Appellants (Defendants).**

**No. 49A02–9407–CV–452.**

Court of Appeals of Indiana.

June 28, 1995.

Rehearing Denied Aug. 18, 1995.

Jack Hittle, Church Church Hittle & Antrim, Noblesville, for appellant.

James E. Freeman, Jr., John W. Longnaker, III, Sansberry Dickmann Freeman & Builta, Anderson, for appellees cross-appellants.

## OPINION

SULLIVAN, Judge.

Haimbaugh Landscaping, Inc. (Haimbaugh) appeals the trial court's grant of summary judgment in favor of Lawrence A. Jegen, III, and Janet M. Jegen (the Jegens) upon their second motion for summary judgment. The Jegens cross appeal the trial court's denial of their first motion for summary judgment.[1] We reverse in part and affirm in part.

This case presents two issues:

1. On July 26, 1994, the Jegens filed a Joint Petition to Consolidate Appeals, in which they

(1) whether a contractor is entitled to a mechanic's lien for the services and material supplied in conjunction with an ornamental landscaping project; and

(2) whether Indiana's mechanic's lien statute, I.C. 32–8–3–1 *et seq.* violates the Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution.

Haimbaugh is a landscape contracting company. The Jegens are owners of a residence in Marion County, Indiana. The Jegens contracted with Haimbaugh to provide landscaping services at the Jegens' residence. Among other miscellaneous landscaping services, Haimbaugh planted grass, ornamental evergreen trees, decorative plants and shrubs. Haimbaugh moved earth and installed railroad ties and edging. Haimbaugh also maintains that it supplied over $8,000 in materials in conjunction with the landscaping project, including several trees and shrubs. Haimbaugh's bill further indicates that it provided clay, soil, grass seed, gravel, peat moss, 230 feet of steel edging, two railroad ties, over eleven tons of boulders, nearly two tons of Chestnut stepping stones and fifteen additional stepping stones. None of the services or materials Haimbaugh provided were part of the original construction of the residence.

The Jegens maintain that roughly twenty-five percent of the trees and plants Haimbaugh planted began to die within a few weeks after the parties entered into the contract. The Jegens contend that Haimbaugh failed to provide adequate drainage and to properly match the plants and trees with the clay soil, which caused the plants to drown in groundwater trapped by the clay.[2] When Haimbaugh presented the Jegens with a bill for $14,197.96, the Jegens paid only $9,000 of that amount, leaving a balance of $5,197.96.

Haimbaugh demanded the full amount. The Jegens refused to pay the balance, asserting that Haimbaugh had overbilled them and had breached the contract. On October 24, 1991, within sixty days after the completion of the project, Haimbaugh filed a Sworn Statement and Notice of Intent to File a Mechanic's Lien against the Jegens' real estate in the amount of $5,197.96 pursuant to I.C. 32–8–3–1 (Burns Code Ed.Repl.1980).[3] Later, Haimbaugh filed a claim to foreclose the lien.

The Jegens then filed two motions for summary judgment, the first of which challenged the constitutionality of Indiana's procedure for acquiring a mechanic's lien against real property. The Jegens' second motion contended that Haimbaugh could not properly obtain a mechanic's lien for landscaping services. The trial court denied the Jegens' first motion, determining that Indiana's real estate mechanic's lien statute does not violate either the federal or Indiana's constitution. The trial court granted the Jegens' second motion, however, holding that Haimbaugh could not obtain a mechanic's lien for the particular services it provided. Haimbaugh appeals the trial court's decision to grant the second motion and the Jegens appeal the trial court's denial of their first motion.[4] We address both appeals.

The parties in this case appeal both a grant and a denial of summary judgment. We use the same standard in ascertaining the propriety of summary judgment as does

stated that both parties agreed to consolidate their appeals under one cause number. Because both appeals involve common questions of law, this court granted the motion on October 4, 1994.

2. The Jegens also contend that the pooling of water around the plants caused them to develop root rot and fungus.

3. The notice is signed by Robert Haimbaugh in his capacity as President of Haimbaugh Land-

scaping, Inc. It contains a precise description of the Jegens' property, and lists the following as the claimed "improvement(s)": "Provided labor and materials for landscaping." Record at 20.

4. Haimbaugh sought relief in the court below upon three grounds: foreclosure of a mechanic's lien, account stated, and unjust enrichment. The summary judgment disposition of this case at trial did not dispose of Haimbaugh's account stated and unjust enrichment claims.

the trial court.[5] *Miller v. West Lafayette Community School Corp.* (1995) 2d Dist. Ind. App., 645 N.E.2d 1085, 1087; *Newhouse v. Farmers National Bank of Shelbyville* (1989) 1st Dist. Ind.App., 532 N.E.2d 26, 28. We will view all of the materials designated to the trial court in the light most favorable to the non-moving party in order to determine whether there is a genuine issue of material fact. *Board of School Trustees of Salem Community Schools v. Robertson* (1994) 5th Dist. Ind.App., 637 N.E.2d 181, 184, *trans. denied.* The fact that both parties requested summary judgment does not alter our standard of review. We must separately consider each motion to determine whether the moving party is entitled to judgment as a matter of law. *See, e.g., Anderson v. Horizon Homes, Inc.* (1995) 5th Dist. Ind.App., 644 N.E.2d 1281, 1289, *trans. denied; Laudig v. Marion County Board of Voters Registration* (1992) 5th Dist. Ind.App., 585 N.E.2d 700, *trans. denied.*

## I. ACQUIRING A MECHANIC'S LIEN FOR LANDSCAPING SERVICES

### A. Haimbaugh's Belated Brief

The Jegens' second motion for summary judgment maintained that Indiana law precludes Haimbaugh from obtaining a mechanic's lien for the landscaping services performed. The trial court agreed, and granted the motion. Haimbaugh then decided to appeal that determination. However, Haim-

baugh filed its Appellant's Brief thirty-one days after it filed the record, one day beyond the thirty-day period Indiana Appellate Rule 8.1(A) specifies for such filings. In an effort to cure the deficiency, Haimbaugh also filed a Motion for Leave to File a Belated Brief, which this court granted.[6]

■ The Jegens contend that we must dismiss Haimbaugh's appeal because its brief was not timely filed. We disagree. Rule 8.1(A) provides that "[t]he appellant shall have thirty (30) days after filing the record in which to file his brief.... Failure to file appellant's brief within the time limited herein, or any extension of time granted therefor, shall subject the appeal to summary dismissal." Rule 8.1(A) does not mandate an automatic dismissal when an appellant has not timely filed its brief. Dismissal for the late filing of an appellant's brief is within the discretion of this court, rather than mandatory as it was under former rules.[7] The Third District of this court recognized the change in *Meyer v. Northern Indiana Bank and Trust Co.* (1986) 3d Dist. Ind.App., 490 N.E.2d 400.[8]

We disagree with the Jegens' contention that *Meyer, supra,* is at odds with our Supreme Court's decision in *Doe v. Hancock County Board of Health* (1982) Ind., 436 N.E.2d 791.[9] In *Doe,* the appellees filed their brief one day late due to an error in calculating the filing deadline. The First

---

5. Summary judgment is appropriate and "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C).

6. Haimbaugh filed its motion for leave to file a belated brief on September 9, 1994. The Jegens filed their motion to dismiss Haimbaugh's appeal nearly a week later, on September 15, 1994. Haimbaugh's counsel indicated that during the week before the filing deadline, he was involved in rendering an emergency opinion letter. He also cited confusion from the consolidation order, as well as the complicated nature of this case as reasons why he failed to note that the brief was due on September 8 rather than on September 9.

7. The former Indiana Supreme Court Rule 2–15 provided that if an appellant failed to file its brief within the time allotted, the Clerk was to enter

an order dismissing the appeal, unless a Petition for Extension of time was on file. The same language appeared in the former App.R. 8.1(A). In 1981, our Supreme Court amended App.R. 8.1(A) to read as it presently does.

8. The *Meyer* court noted as follows:

"Under [App.R. 8.1(A)], untimely filed briefs are merely subject to dismissal rather than automatic dismissal. This difference allows the appellate court to exercise some discretion to excuse technical rule failures and do justice by deciding cases on their merits." 490 N.E.2d at 404.

9. In so doing, we note that the Jegens correctly point out that footnote 4 of the *Meyer* decision inaccurately reflects *Doe's* disposition before our Supreme Court. That footnote incorrectly states that our Supreme Court denied transfer when, in fact, it granted transfer and summarily affirmed the First District's prior decision.

District of this court denied their verified petition to file a belated brief. Our Supreme Court granted transfer and, effectively affirming the decision of the Court of·Appeals, dismissed the case. The fact that a majority of our Supreme Court chose to not disturb the First District's determination does not make it inconsistent with *Meyer. Doe* does not require this court to dismiss all appeals which do not comport with our appellate rules. *Meyer* recognizes and makes clear that this court retains discretion to determine those appeals which will suffer dismissal because of a late filing.

 We will hold issues waived, or dismiss appeals when parties commit flagrant violations of the Rules of Appellate Procedure. However, because we prefer to decide a case upon its merits, *e.g., Town of Rome City v. King* (1983) 3d Dist. Ind.App., 450 N.E.2d 72, 76, we exercise our discretion to reach the merits when violations are comparatively minor. *Terpstra v. Farmers and Merchants Bank* (1985) 3d Dist. Ind.App., 483 N.E.2d 749, *trans. denied; Viccaro v. City of Ft. Wayne* (1983) 4th Dist. Ind.App., 449 N.E.2d 1161, 1162 n. 1. Here, Haimbaugh has not committed a flagrant violation of our appellate rules, nor has it failed to make a good faith effort to substantially comply with those rules. *See Meyer, supra,* 490 N.E.2d at 404; *Terpstra, supra* at 752–53. The Jegens' arguments did not initially persuade this court that it should dismiss Haimbaugh's appeal, nor do they do so now.[10]

### B. Whether Haimbaugh's Labor and Materials are Within the Purview of Indiana's Mechanic's Lien Law

Haimbaugh contends that the labor and materials it provided to the Jegens entitles it to a mechanic's lien pursuant to I.C. 32–8–3–1. We agree. I.C. 32–8–3–1 reads, in pertinent part as follows:

"Contractors, ... laborers and all other persons performing labor or furnishing materials ... for the erection, altering, repairing or removing any house, mill, manufactory, or other building, bridge, reservoir, systems of waterworks, or other structures, or for construction, altering, repairing, or removing any walk or sidewalk, whether such walk or sidewalk be on the land or bordering thereon, stile, well, drain, drainage ditch, sewer or cistern or any other earth-moving operation may have a lien separately or jointly upon the [items mentioned above] which they may have erected, altered, repaired, moved, or removed or for which they may have furnished materials or machinery of any description, and on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either...."

 The above portion of Indiana's statute remains virtually identical to the version in effect at the turn of the century. Because the above statute derogates common law, Indiana courts have strictly construed it when determining its scope, and, accordingly, those persons entitled to acquire and enforce such liens. *City of Evansville v. Verplank Concrete & Supply* (1980) 1st Dist. Ind.App., 400 N.E.2d 812, 818; *Hough v. Zehrner* (1973) 3d Dist., 158 Ind.App. 409, 302 N.E.2d 881, 883; *Aetna Glass Corp. v. Mercury Builders, Inc.* (1969) 145 Ind.App. 286, 250 N.E.2d 598.[11] Any lien claimant under I.C. 32–8–3–1 has the burden to prove that his or her claim is within the scope of the statute. *Hough, supra* 302 N.E.2d at 883. Once a claimant successfully does so, courts give the statute a liberal construction so as to accomplish its remedial purpose. *Id.*[12]

---

10. This ruling does not excuse noncompliance with the appellate rules, and no one should interpret it as doing so. It remains within this court's discretion to dismiss appeals for failure to follow the rules. *Meyer, supra* at 404; *Bethlehem Steel Corp. v. Artim Transportation System, Inc.* (1982) 3d Dist.Ind.App., 430 N.E.2d 1185, 1187.

11. *See also Toner v. Whybrew* (1912) 50 Ind.App. 387, 98 N.E. 450; *Cincinnati Railway & M.R. Co.* *v. Shera* (1905) 36 Ind.App. 315, 73 N.E. 293; *Krotz v. A.R. Beck Lumber Co.* (1905) 34 Ind.App. 577, 73 N.E. 273.

12. *See also Toner v. Whybrew* (1912) 50 Ind.App. 387, 98 N.E. 450, 452; *Potter Manufacturing Co. v. A.B. Meyer & Co.* (1909) 171 Ind. 513, 86 N.E. 837; *Clark v. Huey* (1895) 12 Ind.App. 224, 40 N.E. 152.

Here, Haimbaugh argues that it would be absurd to limit the scope of I.C. 32–8–3–1 to those items the statute specifically and expressly mentions. Haimbaugh submits that this case is one we must ultimately decide upon policy considerations, and that, in the end, landscaping is the type of work which lien laws should protect. The Jegens counter that ornamental landscaping is not within the scope of the objects lienable under the statute because, *inter alia*, it is (1) not a part of the erection of a structure; (2) not directly and necessarily connected with the erection of a structure; (3) not a necessary and essential part of a structure, or part of its subsequent functional use.

The labor and materials Haimbaugh provided constitute ornamental and decorative landscaping, not merely maintenance. Whether a landscaper may acquire a lien pursuant to I.C. 32–8–3–1, for providing ornamental and/or decorative landscaping materials and services not in conjunction with the initial construction of a structure is a question of law.

Haimbaugh draws our attention to *Hough, supra*, 302 N.E.2d at 885, a case in which the Third District of this court held that "[c]rushed stone delivered for a driveway and parking area to be used in conjunction with a commercial garage is a structure within the scope of the mechanic's lien statute." [13] In reaching its decision, the *Hough* court relied in large measure upon *Wells v. Christian* (1906) 165 Ind. 662, 76 N.E. 518. In *Wells*, a contractor excavated and installed pipes and mains that connected an existing heat plant to adjoining properties, apparently to supply those properties with steam heat. The *Wells* court described the work as "essential to the exercise of the [heat plant] franchise", holding that a contractor may obtain a lien for labor and materials "directly and necessarily connected" to projects that, while not necessarily part of the initial construction or a repair of the initial construction, serve to "accomplish the objects for which [the structure itself] was erected." 76 N.E. at 519.[14]

In support of its argument, Haimbaugh relies heavily upon the purpose of I.C. 32–8–3–1, citing the following from *Hough:*

" 'The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily, buildings and the land on which they are erected to the payment of the labor and materials incorporated, and which have

13. Courts in other jurisdictions adopted an analysis similar to that employed in *Hough* when determining whether to grant mechanic's liens for landscaping-type activities like grading, excavating, and planting. *See Reid v. Berry* (1901) 178 Mass. 260, 59 N.E. 760, (Labor and materials used in digging, building, and concreting the cellar of an existing residential structure, as well as grading the lot upon which it was located was lienable if it was reasonably necessary to the proper construction and occupation of the house so as to be part of its erection.). *See also Camputaro v. Stuart Hardwood Corp.* (1980) 180 Conn. 545, 429 A.2d 796, 799 (Whether contractor could obtain a lien for grading and excavating near site of building that was not completed would have required looking to "whether the work done was a convenient necessity to the building's construction" had the building been built.); *Vasquez v. Village Center, Inc.* (1962) Mo., 362 S.W.2d 588 (Grading vacant land that was integral part of a plan to build a shopping center was lienable.); *Leigland v. McGaffick* (1959), 135 Mont. 188, 338 P.2d 1037 (Backfilling around a foundation was a necessary and integral part of foundation work and lienable.); *Robison v. Thatcher* (1969), 252 Or. 603, 451 P.2d 863 (Under statute that made lienable work incidental to construction of any improvement, excavating done before the construction of a home was lienable.); *Dean v. McFarland* (1972) 81 Wash.2d 215, 500 P.2d 1244 (Statute that entitled a lien to one who supplied equipment for clearing, grading, filling in, or otherwise improving real property did not apply to claimant who supplied equipment to haul away debris from a building that was demolished because removal was not an integral part of a contract for construction of a building at the site.).

14. Of critical import in *Wells* was the fact that the pipes and mains were clearly "part of the apparatus necessary to accomplish the objects for which [the] heat plant was erected." 76 N.E. at 519. Through the years, Indiana courts interpreted the mechanic's lien statute to include certain services and projects, which our legislature later incorporated into the statute. *Koch v. Fishburn* (1929) 90 Ind.App. 287, 164 N.E. 721 (drilling of wells; well determined to be within statute); *Beeson v. Overpeck* (1942) 112 Ind.App. 195, 44 N.E.2d 195 (architectural services). Recently, our Supreme Court determined that a developer who does not perform any physical or manual labor in connection with a construction project is not entitled to a lien against that property. *See Premier Investments v. Suites of America, Inc.* (1994) Ind., 644 N.E.2d 124.

given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and materials furnished by others, without recompense.'" 302 N.E.2d at 883 (*citing Moore–Mansfield Construction Co. v. Indianapolis, New Castle & Toledo Railway Co.* (1913) 179 Ind. 356, 372, 101 N.E. 296, 302).

The Jegens counter that the ornamental and decorative landscaping was not part of the original site preparation for the construction of the Jegens' home and that it is separated in time from the construction of the home. They submit that we should adopt a line of reasoning similar to that adopted by the Tennessee Supreme Court many years ago in *Nanz v. Cumberland Gap Park Co.* (1899) Tenn., 52 S.W. 999. In *Nanz* the court held that the furnishing and planting of flowers, shrubs and trees in connection with the erection of a structure and the grading of grounds and walks would not sustain a lien under Tennessee's statute.[15]

The Jegens also point to language in a draft of a proposed amendment to I.C. 32–8–3–1, a section of which specifically includes seeding, sodding, and planting for landscape purposes as types of "construction" which entitle a person to a lien. The specificity of this language, when compared to its statutory predecessor, the Jegens contend, supports their argument that the current statute does not make lienable ornamental landscaping which is not part of an erection, construction, alteration, or repair of a structure or a building.

Whether Haimbaugh may obtain a lien requires us to focus upon the services and materials provided rather than upon the identity of the provider in a case such as this. Indeed, both *Wells, supra,* and *Hough, supra,* examined the nature of the services and materials provided. The failure to identify every type of provider by specific designation is not fatal to inclusion within the statute if we determine that the statute covers the services rendered or materials provided.[16]

Contrary to the Jegens' assertion, the fact that Haimbaugh did not perform its landscaping services contemporaneous with the construction of the Jegens' residence is not fatal to its claim. Indeed, our Supreme Court has recognized that labor or materials provided in conjunction with a project which is necessary and essential to the functional use of a house, mill, manufactory or other "building", may give rise to a lien even if they do not occur contemporaneously with the original construction. *See Wells, supra,* 76 N.E. at 519.[17]

Moreover, we are not convinced that the statute evinces an intent to include only those materials and/or services which are provided in conjunction with a project that either creates a statutorily specified structure, or one that creates some item that is necessary and essential to the functional use of such a structure. Regardless, we need not torture the language of the statute to determine that an ornamental landscaping project constitutes or creates a "structure" to make such projects lienable. Instead, we need look no further than the language our Supreme Court recently employed in interpreting I.C. 32–8–3–1. While I.C. 32–8–3–1 does not specifically make lienable work which creates an "improvement" upon land or work that "improves" land, our Supreme Court recently concluded that "the erecting re-

---

**15.** We note here that, in response to *Nanz, supra,* and similar Tennessee decisions, the Tennessee legislature re-wrote its real property mechanic's lien statute, defining "improvement" as follows:

"'Improvement' means any building, structure, erection, alteration, demolition, excavation, or any part thereof, including ornamental shrubbery and trees, driveways, and private roadways, on real property for it [sic] permanent benefit, whether there is existing at the time of such work, any building, structure or other improvements upon the real property." Tenn.Code § 66–11–101(7) (quoted in *In re*

*Fairfield Communities, Inc.* (1993) 8th Cir., 990 F.2d 1075, 1077).

**16.** *Premier Investments v. Suites of America, Inc.* (1994) Ind., 644 N.E.2d 124, held that a "developer" did not fall within the statutory meaning of contractor or laborer as a person entitled to a lien. Such however does not diminish the fact that the focus is necessarily upon the nature of the material, services, or labor provided rather than the designation of the provider.

**17.** The excavating and pipe laying in *Wells, supra,* occurred well after the original construction.

quirement of Indiana Code § 32–8–3–1 is some physical act of labor in connection with the creation of a structure *or improvement* on land." *Premier Investments v. Suites of America* (1994) Ind., 644 N.E.2d 124, 128 (emphasis supplied). Such language convinces us that our Supreme Court has at least implicitly determined that projects involving physical labor supplied in connection with the "creation of . . . [an] improvement on land" are within the statute. *Id.*

In *Premier Investments, supra,* our Supreme Court also identified the function of mechanic's lien statutes as "providing a method for contractors, subcontractors, laborers, and materialmen *who have increased the value of a property owner's land* and not been paid to obtain remuneration." 644 N.E.2d at 131 (emphasis supplied) (citing *Moore–Mansfield Construction Co. v. Indianapolis, New Castle, and Toledo Ry. Co.* (1913), 179 Ind. 356, 390, 101 N.E. 296, 309). Thus, in our view, our Supreme Court confirms that the purpose of the statute here is better realized by a determination that makes lienable those materials and/or services provided in conjunction with a project that creates an "improvement" to a piece of real estate to which a structure is inextricably tied. Such an "improvement" necessarily results in a valuable addition to the structure itself, and in that sense, the structure undeniably benefits from the project which created the "improvement."

■ Black's Law Dictionary defines "improvement" as follows:

"A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. . . ." Black's Law Dictionary 520 (Abridged 6th ed. 1991).

It is clear that the landscaping services Haimbaugh provided are inextricably tied to the Jegens' real estate. Accordingly, assuming that the material and services Haimbaugh provided in conjunction with its ornamental landscaping project constitute a "valuable addition" to that real estate, we determine that it is more in line with the current conception of I.C. 32–8–3–1 to hold that they are lienable.[18]

An Illinois court in *Beaudry v. Bell* (1928) 250 Ill.App. 468, interpreted a statute somewhat similar to I.C. 32–8–3–1 in much the same manner. The Illinois mechanic's lien statute at issue there granted a lien to " '[a]ny person furnishing services, labor or material for the erection of a building, or structure, or improvement. . . .' " *Id.* at 471 (quoting Cahill's Ill.Stat. ch. 82 para. 2). The court held that the word "erection", when construed in context, was broad enough to include materials and labor supplied in connection with planting shrubs and trees and making a lawn.[19] The Jegens argue the case

---

**18.** We recognize that an "improvement" is not necessarily an addition which increases the value of a particular piece of real estate in terms of market price or its attractiveness to potential buyers. An improvement is some kind of valuable addition constituting more than mere repairs involving labor or capital, and is intended to enhance the property's value, beauty, utility, or to adapt it for new or further purposes. In that sense, the addition need not necessarily increase the market value of the property. Indeed, what constitutes an increase in market value varies according to the needs, wants, or tastes of potential buyers.

Having so recognized, we note that, at oral argument, the Jegens contended that the work performed actually decreased the value of their land. Because we reverse and remand the case upon this issue, perhaps one of the· issues to be

argued in light of such a contention is whether in fact Haimbaugh's work constituted a "valuable addition" or an "amelioration in the property's condition" as outlined above, and not necessarily whether it increased the market value in terms of attractiveness to potential buyers. Of course, the Jegens may cite evidence of a decrease in market value to show that Haimbaugh's project did not provide them with a "valuable addition" in terms of aesthetics or utility. Should the trier of fact agree with Haimbaugh, I.C. 32–8–3–1 covers the labor and materials Haimbaugh supplied here. On the other hand, should the trier of fact agree with the Jegens that the materials and labor supplied did not help to create an improvement as described above, it may not claim a lien under the statute.

**19.** More recent Illinois cases have adhered to *Beaudry. E.g., Robb v. Lindquist* (1974) 3d Dist.,

before us is distinguishable from *Beaudry* because the statute at issue there included the word "improvements" whereas Indiana's does not. This is a hollow distinction in light of our Supreme Court's use of the term "improvement" in *Premier Investments, supra.*[20]

Accordingly, because we agree that Haimbaugh may be factually entitled to a mechanic's lien pursuant to I.C. 32–8–3–1, we conclude that the trial court erred in granting the Jegens' second motion for summary judgment.[21]

## II. CONSTITUTIONAL CHALLENGE TO MECHANIC'S LIEN STATUTE

Having concluded that Haimbaugh may be entitled to a mechanic's lien pursuant to I.C. 32–8–3–1 if its work in fact constitutes an "improvement" as discussed above, we now address the Jegens' constitutional challenge. The Jegens argue that I.C. 32–8–3–1 *et seq.* violates the Due Process Clause of the United States Constitution as well as the Due Course of Law Clause of the Indiana Constitution. We disagree.

I.C. 32–8–3–1 *et seq.*, provides the procedure by which one perfects a mechanic's lien against real property in Indiana. One who wishes to acquire such a lien must file two copies of a sworn Notice of Intention to Hold Lien (notice) in the County Recorder's office within sixty days after performing labor or providing materials which give rise to the lien. I.C. 32–8–3–3 (Burns Code Ed.Repl. 1980 & Supp.1994). The Recorder then sends a copy of the notice to the record owner of the real estate subject to the lien.[22]

After receiving notice of the lien, a property owner has the right to file a notice to commence suit, which then compels the lienholder to file a foreclosure action within thirty days or lose the lien. I.C. 32–8–3–10 (Burns Code Ed.Repl.1980). If the property owner does not file a notice to commence suit, the lienholder still must file suit to foreclose the lien within one year. I.C. 32–8–3–6 (Burns Code Ed.Repl.1980). The property owner may contest the lienholder's allegations at a foreclosure hearing. In such a case, the lien remains attached to the property until disposition of the foreclosure action. Alternatively, a property owner may choose to post a bond from which to pay any judgment later entered against him as a result of the foreclosure suit. I.C. 32–8–3–11 (Burns Code Ed.Repl.1980). In such an instance, the real estate is released from the lien. *Id.*

The Jegens contend that the above procedure deprives landowners of a significant property interest without due process of law because: (1) there is no requirement that the notice contain any substantive underlying

---

23 Ill.App.3d 186, 318 N.E.2d 301, 304 (court refused to set aside the trial court's finding that clearing land with extensive bulldozing before replanting was not farm work, but rather improvements to the land, and thus subject to a mechanic's lien); *Liddell v. Smith* (1965) 5th Dist., 65 Ill.App.2d 295, 213 N.E.2d 599, 603 (statute contemplated clearing land of timber, brush, and debris before plowing it).

**20.** Recently, this court, in *Tucker v. State* (1995) Ind.App., 646 N.E.2d 972, construed the home improvement fraud statute, and held that spraying for termites was within the definition of "improvement" as an "alteration, repair or other modification." I.C. 35–43–6–3.

**21.** We note here that the Jegens are correct in noting that our legislature has not specifically made the statute applicable to grading, landscaping, nursery products, shrubs, flowers, grass, and the like, despite several opportunities to do so. That fact does not necessarily support the Jegens' position in this case. We also point out that relevant portions of a 1995 proposed draft of I.C.

32–8–3–1 defining and specifically including landscaping did not emerge from committee and was never adopted by our legislature. Regardless, that particular piece of proposed legislation does not *necessarily* support the Jegens' position that the statute does not now include within its scope decorative and ornamental landscaping. It could be interpreted that the proposed legislation is a recognition that the current statute was intended to cover such items, and that the added specificity would simply confirm that position. *See Jacobs v. State* (1994) 3d Dist. Ind.App., 640 N.E.2d 61, 64–65, *trans. denied; United States Fidelity & Guaranty Co. v. DeFluiter* (1983) 3d Dist. Ind.App., 456 N.E.2d 429, 431–32, *trans. denied; Indiana Dep't of State Revenue v. Endress & Hauser, Inc.* (1980) 1st Dist. Ind.App., 404 N.E.2d 1173, 1175, *reh'g denied.*

**22.** The notice must include the: (1) amount claimed; (2) name and address of claimant; (3) name of the owner as shown on the county auditor's transfer books; and (4) legal description and street number of the property. *See* I.C. 32–8–3–3.

facts; (2) the notice is filed *ex-parte* with the County Recorder and no judicial review or predeprivation hearing is available before the lien is perfected; (3) there is no requirement of a prompt post-deprivation hearing after the lien is perfected; (4) there is no requirement of a showing of exigent circumstances; and (5) there is no requirement that the lienholder post a bond.

The Jegens argue that the filing of a mechanic's lien poses a substantial risk of erroneous deprivation, while providing little, if any, real safeguard against such deprivation. They further contend that the state's interest does not present a pressing need for prompt action without notice and hearing, submitting that it is "hardly likely that [a landowner would] jeopardize the value of improvements, transfer or destroy them before a hearing could be held, as might be the case where personal property is involved." Brief of Cross–Appellants (Upon First Motion) at 19. The Jegens argue that requiring some kind of predeprivation hearing or judicial review will not substantially diminish the protection provided the lienholder under the current statute. The Jegens conclude that the State's interest in preventing the property from being sold, destroyed, etc., can be promoted by measures less intrusive.[23] They invite us to apply the same kind of reasoning as did the First Circuit Court of Appeals in *Reardon v. U.S.* (1991) 1st Cir., 947 F.2d 1509, a case holding that a federal EPA lien statute amounted to a deprivation of a significant property interest and that the statute's provisions did not satisfy the Due Process Clause.[24]

Haimbaugh submits that requiring a contested court hearing or a bond before the notice of lien takes effect would largely defeat the purpose of the statute. Haimbaugh points to the existing safeguards, namely the Jegens' entitlement to a post-lien hearing and their right to post bond in order to release their property from the lien. Haimbaugh next asserts that the kind of pre-notice or a pre-filing hearing to which the Jegens assert they are entitled would amount to little or no change in the status of the real estate. It contends that the mere filing of such a request would in and of itself place the same practical restrictions, or "clouds" against the real estate as does the actual filing of the lien. Haimbaugh contends that practitioners would almost certainly file a *lis pendens* notice at the same time they file the pre-lien notice, which would have the same impact as the lien itself. Thus, Haimbaugh concludes that the only result would be to "add another layer of time, expense and delay for both the Claimant and the property owner." Brief of Appellee (Upon First Motion) at 15–16.

■ It is fundamental that property cannot be taken without procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution. As many recent Indiana cases indicate, the Indiana Due Course of Law requirement of Article 1, Section 12 of the Indiana Constitution is analogous to the Due Process Clause of the Fourteenth Amendment.[25] *Hudgins v. McAtee* (1992) 3d Dist.Ind.App., 596 N.E.2d 286, 289; *Scalf v. Berkel, Inc.* (1983) 2d Dist.Ind.App. 448 N.E.2d 1201, 1203.

---

23. For example, the Jegens suggest that the State could use a *lis pendens* or a restraining order upon a proper showing that the owner likely will destroy the property. It may be argued, however, that the "less intrusive" measures suggested are more akin to the filing of a lien than to seizure or attachment of the real estate. *See infra*, Part II.B.

24. The Jegens note that Indiana amended its IDEM lien statute to include additional due process safeguards in response to *Reardon, supra*. *See* I.C. 13–7–8.7–10.9. The Jegens maintain that the practical result of the amendment to IDEM's mechanic's lien statute is that the State of Indiana must conform to constitutional safe-

guards, while subcontractors who file under I.C. 32–8–3–1 *et seq.* do not. The Jegens argue that such a result cannot be constitutionally justified. The Jegens maintain that there is no practical difference between foreclosing a mechanic's lien and the procedure to obtain an IDEM lien.

25. Article 1, Section 12 of the Indiana Constitution provides as follows:

"All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay."

Therefore, our analysis will focus upon those cases in this area which interpret the federal constitution.

■ In confronting the Jegens' constitutional challenge, we do not question the wisdom or the desirability of our legislature's actions. *Scalf, supra,* 448 N.E.2d at 1203 (citing *Short v. Texaco, Inc.* (1980) Ind., 273 Ind. 518, 406 N.E.2d 625, *aff'd* (1982) 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738). Moreover, we accord a strong presumption of constitutionality to all duly enacted statutes. *Id.* We resolve reasonable doubts which may arise in favor of the constitutionality of the legislation at issue. It is manifest that the challenger bears a heavy burden. *Id.* (citing, *inter alia, Dague v. Piper Aircraft Corp.* (1981) Ind., 418 N.E.2d 207).

■ The U.S. Supreme Court has established what is essentially a two-tiered analysis for due process challenges to state statutes which, like the one in this case, involve property rather than liberty interests. The first "tier" involves a two-fold inquiry: (1) an examination of the nature of the governmental involvement in the alleged deprivation, *see Lugar v. Edmondson Oil Co.* (1982) 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482; *Jackson v. Metropolitan Edison Co.* (1974) 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477; and (2) an examination of whether the particular governmental action constitutes the taking of a significant property interest, *see Fuentes v. Shevin* (1972) 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; *see also New Destiny Development Corp. v. Piccione* (1992) D.Conn., 802 F.Supp. 692.

Our constitutional inquiry comes to an end if we fail to find both an actual deprivation of a significant property interest and state involvement in the deprivation. *See New Destiny, supra,* 802 F.Supp. at 695.[26] If, however, there is state action and if that action amounts to the taking of a significant property interest, we proceed to the second "tier", at which point we must determine what procedural safeguards are required to protect that interest. *Connecticut v. Doehr* (1991) 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1; *New Destiny, supra* at 695; *see also Reardon, supra,* 947 F.2d at 1517–18 (nearly identical due process analysis in context of Fifth Amendment). It is at this point that the factors first discussed in *Mathews v. Eldridge* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, provide guidance in determining those situations which will "excuse" the requirement of a predeprivation process.[27]

---

**26.** Indiana courts have applied an analysis nearly identical to that employed by the Supreme Court. It requires two necessary elements before the protections of due process apply: (1) state action; and (2) a constitutionally protected liberty or property interest. *Wilson v. Board of Indiana Employment Security Division* (1979) 270 Ind. 302, 385 N.E.2d 438, *cert. denied,* (1979) 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (*citing Mathews v. Eldridge* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18); *Noland v. Wheatley* (1993) N.D.Ind., 835 F.Supp. 476 (interpreting Indiana law).

**27.** The *Mathews* analysis resulted in a now familiar inquiry, requiring consideration of "the private interest that will be affected by the official action"; "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards"; and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903; *see also Doehr, supra,* 501 U.S. at 9–11, 111 S.Ct. at 2112.

The Jegens suggest that *Penn Central Corp. v. U.S. Railroad Vest. Corp.* (1992) 7th Cir., 955 F.2d 1158, *reh'g denied,* calls into question whether or not the *Mathews* balancing test has at least in part been replaced by *Zinermon v. Burch* (1990) 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 The Jegens also cite *United States v. James Daniel Good Real Property* (1993) 510 U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 for the proposition that due process requires a predeprivation hearing unless some exigency or emergency exists. In *Good,* the U.S. Supreme Court held that, absent exigent circumstances, the Due Process Clause required the federal government to afford notice and a meaningful opportunity to be heard before seizing his real property subject to civil forfeiture. Police officers found drugs and drug paraphernalia in Good's home and Good plead guilty to drug charges under Hawaii law. Four and one-half years later, the government filed an *in rem* civil forfeiture action against Good's home pursuant to 21 U.S.C. § 881(a)(7). Thereafter, a federal magistrate, *ex-parte,* issued a warrant for the seizure of Good's home without first conducting an adversary proceeding.

We agree with the Jegens that recent cases such as *Zinermon* and *Penn Central* seem to require a predeprivation hearing in due process cases similar to the one at bar unless a particular situation presents an "exception" to the general rule that "[i]n situations where the State feasibly

## A. State Action

In *Doehr, supra,* the United States Supreme Court recognized that although prejudgment remedy statutes ordinarily involve disputes between private parties, there is significant governmental assistance by state officials and through state procedures. Specifically, the Supreme Court acknowledged that prejudgment remedy statutes "are designed to enable one of the parties to 'make use of state procedures with the overt, significant assistance of state officials,' and they undoubtedly involve state action 'substantial enough to implicate the Due Process Clause.'" *Doehr, supra,* 501 U.S. at 11, 111 S.Ct. at 2112 (quoting *Tulsa Professional Collection Services, Inc. v. Pope* (1988) 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565).

Indiana courts have held that state action may be found if the State enforces activity which originates privately so long as a nexus exists between the government involvement and the particular activity being challenged or if evidence demonstrates that the State has become a joint participant in that activity. *E.g., Renforth v. Fayette Memorial Hospital Ass'n., Inc.* (1978) 178 Ind.App. 475, 383 N.E.2d 368, *cert. denied* (1979) 444 U.S. 930, 100 S.Ct. 273, 62 L.Ed.2d 187. Here, it is at least arguable that state action does not exist.[28] Regardless, Haimbaugh does not challenge the existence of state action in the operation of I.C. 32–8–3–1 *et seq.* Accordingly, we proceed to the second threshold requirement: whether the Jegens were deprived of a significant property interest.

## B. Deprivation of a Significant Property Interest

It is undeniable that, pursuant to Indiana's mechanic's lien procedure, title or possession may not be wrested from the landowner until a purchaser acquires title through a foreclosure sale. It is also true that a landowner may still legally alienate or further encumber the property until such a sale. On the other hand, as the Jegens aptly point out, the existence of such a lien is not particularly encouraging to a prospective private pur-

can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon, supra,* 494 U.S. at 132, 110 S.Ct. at 987. Such language is a reflection of the current concept of due process; a predeprivation hearing, in many cases, should be provided where it is feasible to do so. We note, however, that the Court was careful to use the term "generally", an implicit recognition that a predeprivation hearing is not required in *all* cases involving due process challenges. Furthermore, in *Penn Central, supra,* the Seventh Circuit made it clear that cases involving *Central, supra,* the Seventh Circuit made it clear that cases involving emergency circumstances or infeasibility are not the only situations that "excuse" the requirement of predeprivation process:

"[The *Mathews*] test is an alternative way of formulating—more accurately perhaps, generating—exceptions to the requirement of predeprivation process. Instead of enumerating discrete exceptions, such as emergency or infeasibility, a court in applying the test asks whether, all things considered, predeprivation process is a reasonable requirement to impose. That depends on the balance between the benefits and the costs of such process." *Penn Central, supra,* 955 F.2d at 1163.

Indeed, situations in which there exists a "heightened plaintiff interest" or a "preexisting interest" may excuse the requirement of predeprivation process. *See Doehr, supra,* 501 U.S. at 26–28, 111 S.Ct. at 2121 (Rehnquist, C.J., con-

curring); *see also, infra,* Part II.C. In *Doehr, supra,* the Supreme Court applied a *Mathews*-type analysis to determine what process was due an individual who challenged a prejudgment attachment statute. 501 U.S. at 9–11, 111 S.Ct. at 2112. With regard to the Supreme Court's decision in *Good, supra,* we note that it does not reject or undermine *Doehr*'s application of *Mathews* when the underlying dispute is between *private parties* with competing private interests and entitlements. *Good* involved a seizure by the government; it was not a dispute involving private parties.

**28.** At least two federal decisions interpreting Indiana law have determined that no state action was involved in situations resulting from application of other lien statutes. Specifically, the Seventh Circuit has held that detention pursuant to a mechanic's lien by a private individual in possession of the motor vehicle at issue under I.C. 9–9–5–6 (since repealed and replaced by I.C. 9–22–5–15), does not constitute state action for purposes of due process protections. *Phillips v. Money* (1974) 7th Cir., 503 F.2d 990, *cert. denied,* (1975) 420 U.S. 934, 95 S.Ct. 1141, 43 L.Ed.2d 409. Also, the federal district court for the Southern District of Indiana ruled that the detention of the plaintiffs' personal property by the operators of a mobile home park who acted under the authority of the Indiana innkeepers lien, I.C. 32–8–27–2, as applied to mobile homes in I.C. 13–1–7–33, does not constitute state action. *Jenner v. Shepherd* (1987) S.D.Ind., 665 F.Supp. 714.

chaser. As a result, the Jegens argue that the filing of a mechanic's lien poses a substantial risk of erroneous deprivation and that landowners may well be deprived of various financing options with respect to the property.

A "taking" of property under the Fourteenth Amendment encompasses any significant deprivation of a property interest, including even temporary deprivations of the use of property. *See, e.g., Connolly Development, Inc. v. Superior Court of Merced County* (1976), 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637, 642. It is clear that the Jegens have a property interest in their fee simple. It is equally clear that the filing of a mechanic's lien is an interference with that property interest. Nevertheless, it does not appear that the Jegens were deprived of a significant property interest.[29]

The Jegens contend that the filing of a notice of intention to hold a lien clouds title, impairs their ability to sell their real property, taints credit ratings, reduces the chance of obtaining a home equity loan or additional mortgage, and may even cause a technical default of an existing mortgage under an insecurity clause. Indeed, the Jegens liken this situation to a situation involving a "seizure" or an "attachment." Those terms would seem too strong to describe a contingent cloud upon an otherwise untainted title. The cloud is contingent in the sense that unless the owner attempts to convey or mortgage the property the lien is totally innocu-

ous. *See Spielman–Fond, Inc. v. Hanson's, Inc.* (1973) D.Ariz., 379 F.Supp 997, *summarily aff'd,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208. The term "seizure" more traditionally and accurately describes a dispossession or other assertion of an interest adverse to that of the owner.[30]

It thus appears that a seizure or attachment constitutes a greater interference with the property rights of an owner than inheres in the filing of a lien. Nevertheless, the Jegens point to *Doehr, supra,* 501 U.S. 1, 111 S.Ct. 2105, as reflecting greater solicitude for property owners subjected to minimal intrusions. In *Doehr,* the U.S. Supreme Court held unconstitutional, upon procedural due process grounds, a Connecticut prejudgment attachment statute. The challenged Connecticut statute authorized prejudgment *ex parte* attachment of realty without prior notice, hearing, or bond upon the plaintiff's verification that there was probable cause to sustain the validity of his or her claim. In the absence of exigent circumstances, the Court held that the statute violated due process as applied in the case of an underlying civil assault claim.

We disagree with the Jegens' contention that the filing of a Notice of Intention to Hold Lien causes exactly the same kind of deprivation as did the Connecticut attachment statute in *Doehr, supra.* The majority in *Doehr* took pains to limit its holding to the

---

**29.** We recognize that courts in other jurisdictions have reached contrary decisions. *See Reardon, supra,* 947 F.2d at 1518; *Barry Properties, Inc. v. Fick Brothers Roofing Co.* (1976) 277 Md. 15, 353 A.2d 222; *Connolly Development, supra,* 553 P.2d 637; *Roundhouse Construction Corp. v. Telesco Masons Supplies Co.* (1975), 168 Conn. 371, 362 A.2d 778, *vacated* (1975) 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 *aff'd,* (1976) 170 Conn. 155, 365 A.2d 393, *cert. denied* (1976) 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172. *See also New Destiny, supra,* 802 F.Supp. at 696 (filing *lis pendens* notice was deprivation significant enough to implicate the requirements of due process).

**30.** In the context of Fourth Amendment constitutional protections, a seizure does not occur when there is a brief investigatory detention or a minimal intrusion into one's possessory rights. *Dunaway v. State* (1982) Ind., 440 N.E.2d 682; *Williams v. State* (1993) 4th Dist. Ind.App., 611

N.E.2d 649, *trans. denied; Bastin v. State* (1987) 3d Dist. Ind.App., 510 N.E.2d 229. In the civil setting, the attachment process is utilized to effect a seizure of property. An attachment occurs when the property "is placed in the custody of the law to secure and protect the interest of creditors." *Boyer v. Meeks* (1929) 88 Ind.App. 450, 453, 164 N.E. 501, 502. More recently it was stated as follows: "An attachment is an ancillary proceeding incidental to the main action by which an alleged debtor's property is *taken* to secure payment of a prospective judgment." *Schwedland v. Bachman* (1987) 2d Dist. Ind.App., 512 N.E.2d 445, 450 (emphasis supplied). Similarly, a notice of levy provided under the Internal Revenue Code constitutes a "seizure" of the property levied upon it in that it is "virtually a transfer to the government of the [property]." *United States v. Pittman* (1971) 7th Cir., 449 F.2d 623, 627.

situation before it.[31] Accordingly, despite the Court's determination in *Doehr* that the attachment statute at issue deprived a property owner of a constitutionally significant property interest,[32] the Court did not definitively determine whether a mechanic's lien constitutes such a deprivation. Chief Justice Rehnquist's concurring opinion notes as follows:

> "I would point out, more emphatically than the Court does, the limits of today's holding. In *Spielman–Fond* . . . the District Court held that the filing of a mechanics' lien did not cause the deprivation of a significant property interest of the owner. We summarily affirmed that decision. [Citation omitted.] Other courts have read this summary affirmance to mean that the mere imposition of a lien on real property, which does not disturb the owner's use or enjoyment of the property, is not a deprivation of property calling for procedural due process safeguards. I agree with the Court, however, that upon analysis the deprivation [in *Doehr*] is a significant one, even though [Doehr] remains in undisturbed possession. . . . Given the elaborate system of title records relating to real property which prevails in all of our states, a lienor need not obtain possession or use

of real property belonging to a debtor in order to significantly impair its value to him." 501 U.S. at 27–28, 111 S.Ct. at 2121.

■ Thus, while it is true that the Chief Justice agreed that the attachment situation in *Doehr* amounted to a constitutionally significant impairment, he implied that the filing of a mechanic's lien may not.[33] It is true that, given the elaborate system of title records relating to real property, a lienor need not necessarily obtain possession or use of real property belonging to a landowner-debtor in order to significantly impair its value to that landowner. However, it only impairs value to the landowner if, for example, he or she experiences difficulty alienating the property, or is deprived of some financing options. None of those abstract situations are before us in this case. The record does not disclose that the Jegens attempted or are attempting to sell their home. Nor does the record reveal that the Jegens have been deprived of the balance of any mortgage, or that they are unable to either close a permanent mortgage or to obtain a second mortgage upon the property's equity. In our view, procedural due process does not extend to hypothetical situations, nor does it apply

---

**31.** There, the Court wrote as follows:

"This case requires us to determine whether a state statute that authorizes prejudgment attachment of real estate without prior notice or hearing, without a showing of extraordinary circumstances, and without a requirement that the person seeking the attachment post a bond, satisfies the Due Process Clause of the Fourteenth Amendment. We hold that, *as applied to this case*, it does not." *Doehr, supra,* 501 U.S. at 4, 111 S.Ct. at 2109 (emphasis supplied).

**32.** Justice White, writing for the majority of the Supreme Court stated as follows:

"We agree with the Court of Appeals that the property interests that attachment affects are significant. For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause. . . .

Instead, the State correctly points out that these effects do not amount to a complete,

physical, or permanent deprivation of real property; their impact is less than the perhaps temporary total deprivation of household goods or wages. [Citations omitted.] But the Court has never held that only such extreme deprivations trigger due process concern. [Citation omitted.] To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection. Without doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process.' [Citations omitted. Footnote omitted.]" *Doehr, supra,* 501 U.S. at 11–12; 111 S.Ct. at 2112–13.

**33.** *Contra Reardon, supra,* 947 F.2d at 1518 ("*Spielman–Fond* should not be read to mean that the imposition of a lien is not a deprivation of a significant interest in property."). The *Reardon* court quoted *Doehr* for the proposition that " 'even the temporary or partial impairments to property rights that attachments, *liens*, and similar encumbrances entail are sufficient to merit due process protection.' " 947 F.2d at 1518 (quoting *Doehr, supra,* 501 U.S. at 11–13, 111 S.Ct. at 2113) (emphasis in original).

when there is, at best, merely a "risk" of deprivation.[34]

In this important respect, this case is very different from one of the principal cases upon which the Jegens rely. In *Barry Properties, Inc. v. Fick Brothers Roofing Co.* (1976), 277 Md. 15, 353 A.2d 222, the court found that the operation of Maryland's mechanic's lien violated the Due Process Clause.[35] The court noted that under Maryland's statute, "there is a 'subsisting lien' as soon as materials are supplied or work is performed, ... which constitutes a cloud on the property owner's title." *Id.* 353 A.2d at 228.[36] That cloud had an important impact upon the landowner in that case, as the court recognized:

> "[D]ue to the [subcontractor's] lien, the [landowner] was deprived of the balance of its construction mortgage and was unable to close a permanent mortgage or to obtain a second mortgage on the property's equity." *Id.*

Here, as discussed above, the Jegens did not suffer any such impact.

## C. Balancing Interests

■ Even if we assume that Haimbaugh's filing of a lien constitutes a constitutionally significant interference or deprivation, the Jegens were not denied due process. Noting its earlier summary affirmance of *Spielman–Fond, supra,* 379 F.Supp. 997, the Supreme Court in *Doehr,* distinguished *Spielman–Fond* from the attachment of real estate involved in *Doehr,* emphasizing that the labor and materials provided in *Spiel-*

*man–Fond* gave rise to a "pre-existing interest in the property at issue." 501 U.S. at 12 n. 4, 111 S.Ct. at 2113 n. 4. The Court wrote as follows:

> "Our summary affirmance in *Spielman–Fond, Inc. v. Hanson's, Inc.* ... does not control. In *Spielman–Fond,* the District Court held that the filing of a mechanic's lien did not amount to the taking of a significant property interest. 379 F.Supp. 997, 999 ... A summary disposition does not enjoy the full precedential value of a case argued on the merits and disposed of by a written opinion.... The facts of *Spielman–Fond* presented an alternative basis for affirmance in any event. Unlike the case before us, the mechanic's lien statute in *Spielman–Fond* required the creditor to have a preexisting interest in the property at issue.... [A] heightened plaintiff interest in certain circumstances can provide a ground for upholding procedures that are otherwise suspect. [Internal citation omitted.]" *Id.*

In his concurring opinion, Chief Justice Rehnquist again stressed that cases involving mechanic's liens are distinguishable from the situation in *Doehr:*

> "I would point out, more emphatically than the Court does, the limits of today's holding. In *Spielman–Fond* ... the District Court held that the filing of a mechanics' lien did not cause the deprivation of a significant property interest of the owner.

---

34. Should the filing of a mechanic's lien jeopardize a very real prospective loan or sale, we agree that the landowner should have some remedy available to trigger an immediate or early resolution. However, this case does not present such a scenario.

In any event, although we hold that in this case, I.C. 32–8–3–1 *et seq.* is not unconstitutional, nor is it unconstitutional across the board, the legislature in its exclusive prerogative to determine policy might afford a more certain and timely hearing to landowners. For example, the legislature could mandate that the landowner's demand requiring the lienholder file foreclosure within thirty days would trigger some immediate probable cause-type determination. As an example of what might be done for the real estate mechanic's lien statute, our legislature may be well-served to utilize the same language as it did in enacting I.C. 13–7–8.7–10.9, which added notice and hearing provisions to Indiana's IDEM

lien statute, and which follows the federal requirements for due process.

35. In *York Roofing, Inc. v. Adcock* (1993) 333 Md. 158, 634 A.2d 39, the Court of Appeals of Maryland recognized that the Maryland legislature enacted emergency legislation as a result of the *Barry Properties* decision.

36. The court then discussed the implications of such a cloud:

> "Although possession will not be wrested from the owner until a purchaser acquires title through a foreclosure sale and the owner can still legally alienate or further encumber the property until that time, in reality, since he no longer has unfettered title, not only will it be extremely difficult for him to do so but additionally his equity will be diminished to the extent of the lien." *Barry Properties, supra,* 353 A.2d at 228.

We summarily affirmed that decision. [Citation omitted.] Other courts have read this summary affirmance to mean that the mere imposition of a lien on real property, which does not disturb the owner's use or enjoyment of the property, is not a deprivation of property calling for procedural due process safeguards. I agree with the Court, however, that upon analysis the deprivation [in *Doehr*] is a significant one, even though [Doehr] remains in undisturbed possession.... Given the elaborate system of title records relating to real property which prevails in all of our states, a lienor need not obtain possession or use of real property belonging to a debtor in order to significantly impair its value to him.

But in *Spielman–Fond, Inc., supra,* there was, as the Court points out in fn. 4, *ante,* an alternate basis available to this Court for affirmance of that decision. Arizona recognized a pre-existing lien in favor of unpaid mechanics and materialmen who had contributed labor or supplies which were incorporated in improvements to real property. The existence of such a lien upon the very property ultimately posted or noticed distinguishes those cases from the present one, where the plaintiff had no pre-existing interest in the real property which he sought to attach. Materialman's and mechanic's lien statutes award an interest in real property to workers who have contributed their labor, and to suppliers who have furnished material, for the improvement of the real property. Since neither the labor nor the material can be reclaimed once it has become a part of the realty, this is the only method by which workmen or small businessmen who have contributed to the improvement of the property may be given a remedy against a property owner who has defaulted on his promise to pay for the labor and the materials. To require any sort of a contested court hearing or bond before the notice of lien takes effect would largely defeat the purpose of these statutes." *Doehr,* 501 U.S. at 27–28, 111 S.Ct. at 2121 (Rehnquist, C.J., concurring).

The case before us is identical to the lien situation described by the Chief Justice above and upheld in *Spielman–Fond.* It is unlike the traditional attachments and seizures treated in *Good, Doehr,* and similar cases herein noted. It is undisputed that Haimbaugh supplied labor and materials to the Jegens in conjunction with a project intended to benefit their property. Accordingly, Haimbaugh is in the same position as the laborers in *Spielman–Fond. Doehr* makes clear that such persons have a "pre-existing" or a "heightened" interest such that the property owner involved is not entitled to "any sort of a contested court hearing or bond before the notice of lien takes effect." 501 U.S. at 28, 111 S.Ct. at 2121. Indeed, such a requirement "would largely defeat the purpose of [mechanic's lien] statutes." *Id.* Therefore, even if it can be gainsaid that the filing of the lien caused the Jegens to suffer a constitutionally significant property deprivation, due process does not mandate that the Jegens receive more process than that to which they are entitled under the current mechanic's lien statutes.

### CONCLUSION

The trial court's denial of summary judgment with regard to the alleged unconstitutionality of I.C. 32–8–3–1 *et seq.* is affirmed. The trial court's decision to grant summary judgment to the Jegens with regard to creation of a lien based upon the work performed and materials supplied is reversed and remanded for further proceedings not inconsistent with this opinion.

KIRSCH and RUCKER, JJ., concur.