**WIND DANCE FARM, INC.,**
**Appellant–Defendant,**

v.

**HUGHES SUPPLY, INC.,**
**Appellee–Plaintiff.**

**No. 22A04–0210–CV–501.**

Court of Appeals of Indiana.

July 28, 2003.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, IN, Attorney for Appellant.

David J. Jurkiewicz, Feiwell & Hannoy, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

In this interlocutory appeal, Wind Dance Farm, Inc. ("Wind Dance") challenges the denial of its motion to dismiss a mechanic's lien foreclosure suit filed by Hughes Supply, Inc. ("Hughes"). We affirm.

### Issue

The question raised is whether Wind Dance provided sufficient statutory notice requiring Hughes to commence suit within thirty days, rendering the present foreclosure suit untimely and the mechanic's lien null and void.

### Facts and Procedural History

Wind Dance is the owner of a parcel of Floyd County real estate being developed

as a subdivision known as "Woods of Lafayette." (Appellant's App. 13.) Wind Dance contracted with L.D. Rice Construction, Inc., for construction of a sanitary sewer on that property, and Hughes apparently supplied material for the project. On March 21, 2001, Hughes filed a Sworn Statement of Intention to Hold Mechanic's Lien in the Office of the Floyd County Recorder, claiming an unpaid principal balance of $63,501.59 for labor and materials furnished to the Woods of Lafayette.

In an April 4, 2001 letter to Hughes and its counsel, Wind Dance requested that Hughes release the mechanic's lien "as not having been timely filed." (Appellant's App. 7.) In a written response, Hughes's attorney advised Wind Dance that he represented Hughes and asked Wind Dance to "please cease direct communications with Hughes Supply, Inc." (Appellant's App. 8.) Wind Dance sent a second letter, dated April 12, 2001, to Hughes's counsel, again requesting a release of the mechanic's lien "due to the untimely filing" and cautioned that, should Hughes bring a foreclosure action, Wind Dance would counterclaim for slander of title. (Appellant's App. 9.)

The next month, on May 15, 2001, Wind Dance recorded an Affidavit of Service with the Floyd County Recorder. That Affidavit provides in part:

4. That this affiant on behalf of his client sent a notice to Hughes Supply, Inc., originally on April 4, 2001[,] requesting the lien be released of record.

. . . .

6. That on April 12, 2001, pursuant to the direction of [Hughes's attorney] . . . the affiant, on behalf of his client, sent a notice to [Hughes's attorney], to either have his client release the lien or commence foreclosure proceedings, and said notice was sent more than thirty (30) days prior to the date of this Affidavit.

7. That more than thirty (30) days have passed since the notice being forwarded to the attorney for Hughes Supply, Inc., and no suit or foreclosure on said lien is pending and no unsatisfied judgment has been rendered on said lien.

8. That this Affidavit is made in accordance with Indiana Code 32–8–3–10 [now Indiana Code Section 32–28–3–10] for purposes of the Recorder of Floyd County, Indiana, to rely upon said Affidavit for the purposes of releasing the Mechanic's Lien as referenced herein.

(Appellant's App. 11–12.) Relying on the Affidavit of Service, the Floyd County Recorder released the mechanic's lien.[1]

On February 15, 2002, approximately ten months after Wind Dance's second letter, Hughes commenced this action to foreclose its mechanic's lien, claiming a balance due of $44,460.83. Wind Dance answered the complaint on April 22, 2002, presenting several defenses, including an assertion that the complaint was "barred by release," and asserting a counterclaim for slander of title. (Appellant's App. 16–17.) On that same date, Wind Dance filed a Motion to Dismiss the complaint. Following a hearing, the trial court denied the motion but granted Wind Dance's Motion to Certify Interlocutory Appeal. This court accepted jurisdiction over the case on December 16, 2002.

## Discussion and Decision

### A. Standard of Review

Whether the two letters sent by Wind Dance to Hughes satisfy the notice requirements of the relevant statute is a question of law. *See Duchon v. Ross,* 599

---

1. Hughes challenges the propriety of the Affidavit of Service. Because we decide the appeal on other grounds, we need not address that matter.

N.E.2d 621, 624–25 (Ind.Ct.App.1992) (analyzing whether landlords' letter to tenant was insufficient notification as a matter of law). Interpretation of the relevant statute is also a question of law for the court. *City of Elkhart v. Agenda: Open Gov't, Inc.*, 683 N.E.2d 622, 626 (Ind.Ct.App. 1997). Appellate courts review questions of law under a de novo standard, owing no deference to the trial court's legal conclusions. *South Bend Tribune v. South Bend Cmty. Sch. Corp.*, 740 N.E.2d 937, 938 (Ind.Ct.App.2000).

 In performing our analysis, we acknowledge that a mechanic's lien is a statutory creation. *Ford v. Culp Custom Homes, Inc.*, 731 N.E.2d 468, 472 (Ind.Ct. App.2000). Decisional law has established twin principles applicable to the construction of mechanic's lien statutes. *Lafayette Tennis Club, Inc. v. C.W. Ellison Builders, Inc.*, 406 N.E.2d 1211, 1213 (Ind.Ct.App. 1980). As the mechanic's lien is in derogation of the common law, statutory provisions relating to its creation and existence or to persons entitled to a lien are strictly construed. *Id.* In contrast, provisions relating to enforcement of the lien once attached are liberally construed to achieve their purpose of giving a lien to those entitled to such. *Id.*[2]

### B. Analysis

 Wind Dance filed its Affidavit of Service pursuant to Indiana Code Section 32–8–3–10, which provided:

The owner of property upon which a mechanic's lien has been taken, or any person or corporation having an interest therein, including mortgagees and lienholders, *may notify, in writing, the owner or holder of the lien to commence suit thereon and if he fails to commence such suit within thirty (30) days after receiving such notice, the lien shall be null and void,* but nothing contained herein shall prevent the claim from being collected as other claims are collected by law.

*Any person who has given such notice by registered or certified mail to the holder of the lien at the address given in the notice of lien recorded may file an affidavit of service of said notice to commence suit with the recorder of the county in which said real estate is situated,* which affidavit shall state the facts of said notice and that more than thirty (30) days have passed and no suit for foreclosure of said lien is pending and no unsatisfied judgment has been rendered on said lien; and it shall be the duty of the recorder to record said affidavit in the miscellaneous record book of his office and to certify on the face of the record of any such lien that the same is fully released and the real estate described in said lien shall thereupon be released from the lien thereof.[3]

(Emphasis added).

Typically, a lienholder has one year to foreclose a mechanic's lien. *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95, 103 (Ind.Ct.App.1995) (citing Indiana Code Section 32–8–3–6, now Section 32–28–3–6). Indiana Code Section 32–8–3–10 provides a mechanism by which a party with an interest in real estate may require the lienholder to commence suit before that time in order to clear title or to determine a claimant's lien rights. *Lafayette Tennis Club*, 406 N.E.2d at 1214. The failure to file an action within thirty days after receipt of

---

2. We express no opinion as to whether Hughes is in fact entitled to the benefits of the mechanic's lien, as Wind Dance asserted other defenses which are not part of this appeal.

3. The statute as amended is presently codified at Indiana Code Section 32–28–3–10.

proper notice voids the lien. IND.CODE § 32–8–3–10; *Jegen,* 653 N.E.2d at 103.

Unquestionably, proper notice is required so that the lien holder has an adequate opportunity to take action during the thirty-day period. The statute requires that written notice to commence suit be given by registered or certified mail to the holder of the lien. That process may assure that the proper person receives the notice and indicates that the enclosed communication imparts some legally significant information. *Burggrabe v. Bd. of Pub. Works of Evansville,* 469 N.E.2d 1233, 1236–37 (Ind.Ct.App.1984); *Lafayette Tennis Club,* 406 N.E.2d at 1214; *but see Holmes v. Randolph,* 610 N.E.2d 839, 845 (Ind.1993) (noting that the use of certified mail provides a better record of receipt but does not necessarily increase the probability that the addressee will actually receive the notice). Further, mailing by registered or certified mail, return receipt requested, provides an objective method of ascertaining when the thirty-day period begins to run. *See Smith v. Review Bd. of Ind. Employment Security Div.,* 439 N.E.2d 1334, 1338 (Ind.1982) (Hunter, J., dissenting to denial of transfer) (discussing the benefit in a different context).

Here, Wind Dance did not utilize either registered or certified mail. Nevertheless, Hughes concedes that it received the letters. We have held that substantial compliance with a statutory notice requirement is sufficient when notice is timely received. *See, e.g., McGill v. Ind. Dep't of Correction,* 636 N.E.2d 199, 202 (Ind.Ct. App.1994) (observing that, although the Tort Claims Act requires hand delivery or sending by registered or certified mail, notice filed by regular mail constitutes substantial compliance if it is received within the statutory time limit). As Judge Ratliff reasoned, " '[T]o hold that the notice was defective because of its mode of delivery when the notice was received and the purpose of either hand delivery or registered or certified mail, that of assurance of receipt, was met, is contrary to logic and defies common sense.' " *Burggrabe,* 469 N.E.2d at 1236. Similarly, we find that Wind Dance's failure to comply with the statutory method of mailing does not in itself render the notice deficient.[4]

■ We next examine the quality of the notice. The first letter, dated April 4, 2001, is directed to Hughes and to its counsel and provides in part:

> I have reviewed a certain Sworn Statement of Intention to Hold Mechanic's Lien filed in the office of the Floyd County Recorder on March 12, 2001. I have also reviewed the invoices from Hughes Supply, Inc., to L.D. Rice Construction, and must request you release your Mechanic's Lien, as not having been timely filed.... You might be eligible for a Mechanic's Lien on a significantly reduced amount on those items which were delivered ninety (90) days prior to the Mechanic's Lien. Anything

---

4. Wind Dance sent the second letter to Hughes's attorney rather than "to the holder of the lien at the address given in the notice of lien recorded...." IND.CODE § 32–8–3–10; *cf.* IND.CODE § 32–28–3–10 (stating that notice is to be given "to the lienholder at the address given in the recorded statement and notice of intention to hold a lien...."). On appeal, Hughes claims additional error in that regard. Discussion of that issue is not necessary to our resolution of this appeal. We observe, however, that in the trial court Hughes stated, "I'm not making [a] distinction of where it ought to be sent for today's purposes[,] Judge. I'm not disputing that we got the notice and— the statute says it has to be sent to my client. I understand that once I said correspondence to me, it ought to come to me. I don't disagree with that...." (Tr. 15.)

outside that time frame operates as slander of title on my client's real estate.

This letter is to request that you immediately release the existing Mechanic's Lien or look to the consequences of a slander of title litigation.

(Appellant's App. 7.)

The second letter, dated April 12, 2001, was sent to Hughes's counsel only. It provides in part:

I am comfortable with my client's position. . . . It appears Mr. Rice and/or his representatives picked up the last three (3) items. These three (3) invoices total Nine Hundred Ninety–Eight and 15/100 ($998.15) dollars. There was no delivery of these materials by your client to the property. Once again, I request you release the Mechanic's Lien due to the untimely filing.

Should you choose to foreclose, you might run the title to find there is an existing mortgage on this real estate of One Million Seven Hundred Thousand and no/100 ($1,700,000.00) dollars. Should you choose to bring the foreclosure, my client will counterclaim for slander of title due to the defective nature of the Mechanic's Lien, looking to your client for damages. My client paid L.D. Rice Construction, Inc., and Mr. Rice signed off on Waiver of Liens.

As you may be aware, part of the work was under a Performance Bond and Payment Bond. According to what I have reviewed of your invoices, your invoice number 21005843 dated November 16, 2000 appears to be part of the bonded work. I believe your client may have already made contact directly with the bonding company to attempt collection of that amount.

I would be more than happy to further discuss these issues with [you].

(Appellant's App. 9–10.)

Neither letter mentions a notice to commence a foreclosure action, the relevant statute, or the statutory thirty-day period. *Cf. Overhauser v. Fowler,* 549 N.E.2d 71, 72 (Ind.Ct.App.1990) (describing notice that stated the lienholder had to file suit within thirty days or lose his claim). Collectively, the correspondence represents little more than an effort to motivate Hughes to release the lien, in whole or in part. "Release" is defined as "the act of giving up a right or claim to the person against whom it could have been enforced." BLACK'S LAW DICTIONARY 1292 (7th ed. 1999). Wind Dance's request that Hughes voluntarily relinquish its perceived right to the mechanic's lien is not the same as notice to file a formal foreclosure action to enforce that right.

Further, the letters fail to mention the consequences for the failure to file suit. Our Court considered a similar situation in *Lafayette Tennis Club,* where an unregistered and uncertified letter advised the lienholder, "Please file suit on your Mechanic's Lien which you filed in order that the matter may be brought to a head." 406 N.E.2d at 1214. We found Indiana Code Section 32–8–3–10 ambiguous in that reasonable minds may differ as to whether the form of notice requires express notification that failure to commence a timely suit would result in forfeiture of the lien. We also acknowledged that the statute "should not be treated as intended to create a trap for the unwary." *Id.* at 1215. Considering the remedial purpose of the statute, our Court found the letter deficient in that it did not "alert to the consequences of noncompliance[.]" *Id.* at 1215.

Wind Dance claims that, unlike in *Lafayette Tennis Club,* it was "not dealing with an unwary layperson" but, instead, with Hughes's attorney. (Appellant's Reply Br. at 3.) However, all are presumed to know the law. *Lafayette Tennis Club,* 406

N.E.2d at 1214. In any event, the letters at issue were not reasonably calculated to inform either a layman or an attorney that Wind Dance was invoking the statute. As a matter of law, we find them insufficient to constitute statutory notice to commence suit within thirty days. The trial court properly denied Wind Dance's motion to dismiss.

Affirmed.

BROOK, C.J., and NAJAM, J., concur.

**J.J.C., Appellant–Defendant,**