Rick GILLESPIE, Dawn Gillespie and
Rick's Towing and Maintenance,
LLC, Appellants–Defendants,

v.

Frank B. NILES and Kathryn Niles,
Appellees–Plaintiffs.

No. 49A05–1102–CT–70.

Court of Appeals of Indiana.

Oct. 28, 2011.

Larry F. Whitham, Jonathan L. Whitham, Whitham Hebenstreit & Zubek, LLP, Indianapolis, IN, Attorneys for Appellant.

Grover B. Davis, McClure McClure Davis & Henn, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Rick Gillespie, Dawn Gillespie, and Rick's Towing and Maintenance, LLC, (collectively, the "Defendants"), appeal the trial court's grant of summary judgment to Frank Niles and Kathryn Niles. We affirm in part and reverse in part.

### Issues

The Defendants raise several issues, which we consolidate and restate as:

I. whether the trial court abused its discretion by denying the Defendants' objection to the Nileses' request for a pre-trial conference and refusing to dismiss the action under Indiana Trial Rule 41(E); and

II. whether the trial court properly granted the Nileses' cross-motion for summary judgment and denied the Defendants' motion for summary judgment.

## Facts

The Gillespies are members of Rick's Towing and Maintenance, LLC ("Rick's Towing") and are also employees of the LLC. On December 3, 2008, the Lawrence Police Department impounded a 2005 Chevrolet Tahoe that was being operated by Kathryn, whose address was on Carefree Circle in Indianapolis. The vehicle was towed by Rick's Towing. Although Kathryn had purchased the vehicle from Frank, her father, she had not transferred the title and registration from Frank's name. Indiana Bureau of Motor Vehicles records showed that the vehicle was owned by Frank and that his address was the same as Kathryn's address.

On December 15, 2008, Rick's Towing sent certified letters to Frank and to Onyz Acceptance Corp., the lienholder of record. The letter stated that the Tahoe would be sold at a public auction on January 21, 2009, if it was not claimed. On January 6, 2009, Rick's Towing contacted the Indianapolis Star with a request to publish notice of the sale. The Indianapolis Star acknowledged receipt of the request and informed Rick's Towing that the notice would be published on January 8, 2009. The vehicle was sold at an auction on January 21, 2009, to Jon Trusty for $975, and the Nileses attempted to claim the vehicle on January 26, 2009.

On February 23, 2009, the Nileses filed a complaint against the Defendants alleging that the Defendants had failed to comply with Indiana Code Chapter 9–13–2[1] and that their actions constituted conversion. The Defendants then filed an answer and affirmative defenses. On January 21, 2010, the trial court set the cause for "call of the docket" on February 12, 2010. Appellant's App. p. 3. In response, the Nileses filed a motion for a pretrial conference, and the Defendants filed an objection to the motion. The Defendants argued that the action should have been dismissed pursuant to Indiana Trial Rule 41(E). The trial court then set the matter for pretrial conference and denied the Defendants' objection. The trial court set August 9, 2010, as the deadline for dispositive motions.

On August 6, 2010, the Defendants filed a motion for summary judgment. They alleged that the vehicle was sold pursuant to Indiana Code Section 9–22–5–15 and that they followed all of the statutory requirements. The Defendants argued that the Nileses had been negligent by failing to recover their vehicle in a timely manner. After an extension of time, the Nileses filed a response to the Defendants' motion for summary judgment and a cross-motion for summary judgment. The Nileses alleged that the Defendants had failed to follow the statutory requirements to auction the vehicle because they had sold the vehicle two days early.

After a hearing, the trial court denied the Defendants' motion for summary judgment and granted the Nileses' cross-motion for summary judgment. The trial court found that the Defendants "failed to comply with the appropriate notice of sale provision of I.C. [9–]22–5–15 . . ." and set the matter for a damages hearing. *Id.* at 81. The Defendants filed a motion to correct error, claiming that: (1) there was no basis for granting summary judgment against the Gillespies; (2) any defect in the published notice should not be a basis for declaring the Defendants' lien to be void; (3) the trial court failed to consider their affirmative defenses; (4) the trial court should have dismissed the action pursuant to Indiana Trial Rule 41(E); and (5) the

---

1. Indiana Code Section 9–13–2–1 concerns the definition of abandoned vehicles and does not contain the statutory requirements for auctioning the vehicle.

Nileses failed to file a timely motion for summary judgment. After a hearing, the trial court denied the motion to correct error. The trial court then held a damages hearing and awarded the Nileses a judgment against the Defendants in the amount of $22,000 plus interest of $3,520. The Defendants now appeal.

## Analysis

### I. Involuntary Dismissal

■ The Defendants seem to argue that the Nileses' complaint should have been dismissed for failure to prosecute under Indiana Trial Rule 41(E). We review a ruling on a Trial Rule 41(E) request for dismissal for failure to prosecute for an abuse of discretion. *Belcaster v. Miller*, 785 N.E.2d 1164, 1167 (Ind.Ct.App.2003), *trans. denied.* An abuse of discretion occurs if the decision of the trial court is against the logic and effect of the facts and circumstances before it. *Id.* We will affirm if there is any evidence that supports the trial court's decision. *Id.*

Indiana Trial Rule 41(E) provides:

Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

■ The purpose of this rule is " 'to ensure that plaintiffs will diligently pursue their claims.' " *Id.* (quoting *Benton v. Moore*, 622 N.E.2d 1002, 1006 (Ind.Ct.App. 1993)). Courts of review generally balance several factors when determining whether a trial court abused its discretion in dismissing a case for failure to prosecute. *Id.* These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal, which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. *Id.*

Here, the trial court sua sponte set the cause for "call of the docket" on February 12, 2010. Appellant's App. p. 3. In response, the Nileses filed a motion for a pretrial conference, and the Defendants filed an objection to the motion. The trial court denied the Defendants' objection and held the pre-trial conference. In their objection, the Defendants noted that some discovery had occurred after the complaint was filed and that the Nileses had failed to follow local case management rules. It is unclear from the record how long the case had been inactive. However, the record does not demonstrate that the Defendants were prejudiced by the inactivity or indicate a history of an egregious pattern of deliberate delay on the part of the Nileses. Further, dismissal under the circumstances would run counter to Indiana's policy of having cases decided on their

merits whenever possible. Based upon the record, we cannot say that the trial court abused its discretion in denying the Defendants' objection to the Nileses' request for a pre-trial conference and refusing to dismiss the action under Indiana Trial Rule 41(E).

## II. Summary Judgment

The next issue is whether the trial court properly granted the Nileses' cross-motion for summary judgment and denied the Defendants' motion for summary judgment. Our standard of review for summary judgment is the same standard used by the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 688 (Ind.2010). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Sheehan*, 938 N.E.2d at 688. Also, review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

■ We first address the Defendants' argument that the trial court should not have considered the Nileses' cross-motion for summary judgment because it was filed after the deadline set for filing dispositive motions. The deadline for filing dispositive motions was August 9, 2010, the Defendants filed their motion for summary judgment on August 6, 2010, and after an extension of time, the Nileses filed their "Response to Defendants' Motion for Summary Judgment and Cross motion for Summary Judgment" on September 22, 2010. Appellant's App. p. 52. The Nileses also filed a joint designation of evidence and memorandum in support of their response and the cross-motion.

According to the Defendants, the Nileses' cross-motion was untimely, and the trial court should not have granted it. Indiana Trial Rule 56(B) provides: "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Consequently, even if the Nileses had simply responded to the Defendants' motion for summary judgment, the trial court could still have granted summary judgment to the Nileses. Further, the Nileses submitted the same evidence in support of both their response and their cross-motion. Even if the Nileses' cross-motion was untimely, any error was harmless.

As for the merits of the motions for summary judgment, we begin by noting that Indiana Code Section 9–22–5–15 governs the sale of abandoned vehicles and provides:

(a) An individual, a firm, a limited liability company, or a corporation that performs labor, furnishes materials or storage, or does repair work on a motor vehicle, trailer, semitrailer, or recreational vehicle at the request of the person who owns the vehicle has a lien on the vehicle to the reasonable value of the charges for the labor, materials, storage, or repairs.

(b) An individual, a firm, a partnership, a limited liability company, or a corporation that provides towing services for a motor vehicle, trailer, semitrailer, or recreational vehicle:

(1) at the request of the person who owns the motor vehicle, trailer, semitrailer, or recreational vehicle;

(2) at the request of an individual, a firm, a partnership, a limited liability company, or a corporation on whose property an abandoned mo-

tor vehicle, trailer, semitrailer, or recreational vehicle is located; or

(3) in accordance with IC 9–22–1;

has a lien on the vehicle for the reasonable value of the charges for the towing services and other related costs. An individual, a firm, a partnership, a limited liability company, or a corporation that obtains a lien for an abandoned vehicle under subdivision (2) must comply with IC 9–22–1–4, IC 9–22–1–16, IC 9–22–1–17, and IC 9–22–1–19.

(c) If:

(1) the charges made under subsection (a) or (b) are not paid; and

(2) the motor vehicle, trailer, semitrailer, or recreational vehicle is not claimed;

within thirty (30) days from the date on which the vehicle was left in or came into the possession of the individual, firm, limited liability company, or corporation for repairs, storage, towing, or the furnishing of materials, the individual, firm, limited liability company, or corporation may advertise the vehicle for sale. *The vehicle may not be sold before fifteen (15) days after the date the advertisement required by subsection (d) has been placed or after notice required by subsection (e) has been sent, whichever is later.*

(d) Before a vehicle may be sold under subsection (c), an advertisement must be placed in a newspaper of general circulation printed in the English language in the city or town in which the lienholder's place of business is located. The advertisement must contain at least the following information:

(1) A description of the vehicle, including make, type, and manufacturer's identification number.

(2) The amount of the unpaid charges.

(3) The time, place, and date of the sale.

(e) In addition to the advertisement required under subsection (d), the person who holds the mechanic's lien must:

(1) notify the person who owns the vehicle and any other person who holds a lien of record at the person's last known address by certified mail, return receipt requested; or

(2) if the vehicle is an abandoned motor vehicle, provide notice as required under subdivision (1) if the location of the owner of the motor vehicle or a lienholder of record is determined by the bureau in a search under IC 9–22–1–19;

that the vehicle will be sold at public auction on a specified date to satisfy the lien imposed by this section.

(f) A person who holds a lien of record on a vehicle subject to sale under this section may pay the storage, repair, towing, or service charges due. If the person who holds the lien of record elects to pay the charges due, the person is entitled to possession of the vehicle and becomes the holder of the mechanic's lien imposed by this section.

(g) If the person who owns a vehicle subject to sale under this section does not claim the vehicle and satisfy the lien on the vehicle, the vehicle may be sold at public auction to the highest and best bidder for cash. A person who holds a mechanic's lien under this section may purchase a vehicle subject to sale under this section.

(h) A person who holds a mechanic's lien under this section may deduct and retain the amount of the lien and the cost of the advertisement required un-

der subsection (d) from the purchase price received for a vehicle sold under this section. After deducting from the purchase price the amount of the lien and the cost of the advertisement, the person shall pay the surplus of the purchase price to the person who owns the vehicle if the person's address or whereabouts is known. If the address or whereabouts of the person who owns the vehicle is not known, the surplus of the purchase price shall be paid over to the clerk of the circuit court of the county in which the person who holds the mechanic's lien has a place of business for the use and benefit of the person who owns the vehicle.

(i) A person who holds a mechanic's lien under this section shall execute and deliver to the purchaser of a vehicle under this section a sales certificate in the form designated by the bureau, setting forth the following information:

(1) The facts of the sale.

(2) The vehicle identification number.

(3) The certificate of title if available.

(4) A certificate from the newspaper showing that the advertisement was made as required under subsection (d).

Whenever the bureau receives from the purchaser an application for certificate of title accompanied by these items, the bureau shall issue a certificate of title for the vehicle under IC 9–17.

I.C. § 9–22–5–15.

■ It is undisputed that the Defendants had a lien on the Nileses' vehicle under subsection (a) and subsection (b). The issue here is whether the Defendants complied with the statutory requirements to enforce their lien by selling the vehicle at an auction. As emphasized above, the Defendants could not sell the vehicle "before fifteen (15) days after the date the advertisement required by subsection (d) has been placed or after notice required by subsection (e) has been sent, whichever is later." I.C. § 9–22–5–15(c). The designated evidence demonstrated that the notices required under subsection (e) were sent on December 15, 2008. The advertisement required by subsection (d) appeared in the Indianapolis Star on January 8, 2009. The vehicle was then sold at auction on January 21, 2009. Although the sale occurred more than fifteen days after the subsection (e) notices were sent, it occurred only thirteen days after the advertisement required by subsection (d).

The Defendants argue that the advertisement was timely because they "placed" the notice by contacting the Indianapolis Star on January 6, 2008. Their argument requires that we interpret Indiana Code Section 9–22–5–15 and determine the meaning of "placed" in the statute. The first step in statutory interpretation is determining if the legislature has spoken clearly and unambiguously on the point in question. *Siwinski v. Town of Ogden Dunes,* 949 N.E.2d 825, 828 (Ind.2011). If a statute is clear and unambiguous on its face, no room exists for judicial construction. *Id.* However, if a statute contains ambiguity that allows for more than one interpretation, it opens itself up to judicial construction to effect the legislative intent. *Id.*

Although the Defendants contacted the Indianapolis Star on January 6, 2008, the Indianapolis Star acknowledged receipt of the request and informed Rick's Towing that the notice would be published on January 8, 2009. The Defendants argue that contacting the Indianapolis Star about the advertisement was sufficient to have "placed" the advertisement. However, the

Nileses correctly argue that, under the Defendants' interpretation, "the requirements of the statute would be satisfied without the advertisement being published." Appellee's Br. p. 8. The only reasonable interpretation of "placed" in this context is that the advertisement had to be published at least fifteen days before the sale.

The Defendants failed to wait the required fifteen days before selling the vehicle at the auction. As a result, the Defendants failed to meet the statutory requirements to auction the vehicle. We conclude that the trial court properly denied the Defendants' motion for summary judgment on this basis and properly granted summary judgment to the Nileses.[2]

■■■ Next, the Gillespies argue that the trial court erred by granting summary judgment against them personally rather than summary judgment against Rick's Towing and Maintenance, LLC, only. Generally, Indiana courts are reluctant to disregard a corporate identity. *AGS Capital Corp., Inc. v. Prod. Action Int'l, LLC*, 884 N.E.2d 294, 311 (Ind.Ct.App.2008), *trans. denied.* The doctrine of "piercing the corporate veil" can be used in certain circumstances to hold individuals or another corporation liable for the actions of a corporation. *Id.* " 'When a court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry; therefore, a trial court's decision to pierce the corporate veil will be accorded great deference.' " *Id.* "[C]orporate law permits the corporate form to be disregarded and personal liability imposed only where (1) the corporate form is so ignored, controlled, or manipulated that it is merely the instrumentality of another, and (2) the misuse of the corporate form constitutes a fraud or promotes injustice." *Id.* at 311–12 (quoting *Escobedo v. BHM Health Assoc., Inc.*, 818 N.E.2d 930, 935 (Ind.2004)). The party seeking to pierce the corporate veil bears the burden of proof. *Id.* at 312.

Absolutely no evidence was designated here that the Gillespies had ignored, controlled, or manipulated the corporate form or that their actions were fraud or promoted injustice. The Nileses cite only evidence that the Gillespies were responsible for sending the notice, publishing the advertisement, and conducting the sale and that their friend, Jon Trusty, purchased the vehicle. These actions, however, were performed as employees of Rick's Towing and do not demonstrate a basis for piercing the corporate veil. Further, the Nileses cite no authority for the proposition that a friend of the Gillespies could not pur-

---

**2.** The Defendants cite *Lafayette Tennis Club, Inc. v. C.W. Ellison Builders, Inc.*, 406 N.E.2d 1211, 1213 (Ind.Ct.App.1980), and *Wind Dance Farm, Inc. v. Hughes Supply, Inc.*, 792 N.E.2d 79, 83 (Ind.Ct.App.2003), for the proposition that provisions relating to the creation of mechanic's lien should be strictly construed and provisions relating to the enforcement of the lien should be liberally construed to effect the remedial purposes of the statute. The Defendants argue that they substantially complied with the notice provisions by giving thirteen days notice. That argument would require us to ignore the statutory language, which provides that the vehicle "may not be sold" without the required timely notices.

I.C. § 9–22–5–15(c). Further, we note that we held in *Wind Dance* that "substantial compliance with a statutory notice requirement is sufficient when notice is timely received." *Wind Dance*, 792 N.E.2d at 83. Neither *Wind Dance* nor *Lafayette Tennis Club* concerned an untimely notice.

The Defendants also argue that the trial court failed to consider their affirmative defenses of negligence/comparative fault and laches/estoppels. However, the Nileses' actions in failing to claim their vehicle do not excuse the Defendants' failure to follow statutory procedures for auctioning the vehicle.

chase the vehicle at the auction. In fact, the Gillespies themselves could have purchased the vehicle. I.C. § 9–22–5–15(g) ("A person who holds a mechanic's lien under this section may purchase a vehicle subject to sale under this section."). We conclude that the trial court erred by granting summary judgment against the Gillespies individually.

### Conclusion

The trial court did not abuse its discretion by denying the Defendants' objection to the Nileses' request for a pre-trial conference and refusing to dismiss the action under Indiana Trial Rule 41(E). Further, the trial court properly denied the Defendants' motion for summary judgment and granted summary judgment to the Nileses. However, the trial court erred by granting summary judgment against the Gillespies individually. Rather, the judgment should be against Rick's Towing only. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

ROBB, C.J., and BRADFORD, J., concur.