**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANTS:

**CHET ZAWALICH**
The Law Office of Chet Zawalich
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT J. KONOPA**
**MARK D. KUNDMUELLER**
Tuesley Hall Konopa, LLP
South Bend, Indiana

**FILED**

Jan 30 2012, 9:18 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FLETCHER COLEMAN and DOROTHY COLEMAN, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 71A05-1106-CT-300 |
| NORTHEAST NEIGHBORHOOD REVITALIZATION ORGANIZATION, INC., and NORTHEAST NEIGHBORHOOD COUNCIL, INC., | ) ) ) ) ) ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
Cause No. 71C01-0906-CT-79

**January 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

<u>Case Summary and Issues</u>

After falling in front of an old fire station owned by the City of South Bend and used by the Northeast Neighborhood Council, Inc. ("NENC") as a food pantry (the "Property"), Fletcher Coleman and his wife, Dorothy, filed a complaint asserting claims for 1) negligence on behalf of Fletcher against the Northeast Neighborhood Revitalization Organization ("NNRO"); the City of South Bend; South Bend Heritage Foundation, Inc. (the "Heritage Foundation"); and NENC; and 2) loss of consortium on behalf of Dorothy against the same defendants. NNRO, NENC, and the Heritage Foundation all filed motions for summary judgment. Along with their response, the Colemans filed a motion to strike portions of affidavits which NNRO designated in support of its motion for summary judgment. The trial court denied the Colemans' motion to strike and granted summary judgment in favor of NNRO, NENC, and the Heritage Foundation.

The Colemans raise three issues for our review, which we restate as 1) whether the trial court abused its discretion in denying the Colemans' motion to strike; 2) whether the trial court erred in granting NENC's motion for summary judgment; and 3) whether the trial court erred in granting NNRO's motion for summary judgment.[1] We conclude the trial court did not abuse its discretion in denying the Colemans' motion to strike, and the trial court did not err in granting either NENC's or NNRO's motion for summary judgment, and we therefore affirm.

---

[1] The Colemans do not appeal the trial court's grant of summary judgment in favor of the Heritage

## Facts and Procedural History

On May 30, 2008, Fletcher slipped and fell on loose concrete and/or asphalt in front of the building on the Property. As a result, his left leg was amputated below his knee. The Property, once a fire station, has been owned by the City of South Bend for over twenty years. NENC has occupied the first floor and basement of the Property for several years, running a food pantry on the first floor and storing food for the food pantry in the basement. In addition, NENC conducts meetings in the building, other neighborhood groups hold meetings and activities in the building, and the City uses the building as a polling place for elections. The food pantry is staffed entirely by volunteers. Fletcher served as a volunteer for approximately six years prior to his injury, and he was volunteering on the day of the incident.

Neither NENC nor NNRO lease the Property. NNRO did lease the Property in the past, but it has not since 2003 and at the time of the incident NNRO did not use or occupy the Property. South Bend permits NENC to use the first floor and basement. To aid NENC in its endeavors, NNRO paid for the cleaning and utilities of the Property. NENC, NNRO, and South Bend all have keys to the Property, and little oversight exists regarding who has a key to the Property.

## Discussion and Decision

### I. Standard of Review

In ruling on the admissibility of evidence, trial courts enjoy broad discretion, including rulings on motions to strike affidavits. W.S.K. v. M.H.S.B., 922 N.E.2d 671, 695-96 (Ind.

Foundation, and thus, we need not address it.

Ct. App. 2010). We review such rulings for an abuse of discretion. Id. at 696. When reviewing a grant of summary judgment, the reviewing court stands in the shoes of the trial court and applies the same standards as the trial court. Rider v. McCamment, 938 N.E.2d 262, 266 (Ind. Ct. App. 2010). Summary judgment is appropriate only where the evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Gillespie v. Niles, 956 N.E.2d 744, 748 (Ind. Ct. App. 2011). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. Id.

## II. Motion to Strike

In support of its motion for summary judgment, NNRO submitted affidavits from Pamela Myer, Gary Gilot, Lynn Coleman, and Carl Littrell, all South Bend employees. Each employee averred that "South Bend, as the owner of [the Property], has been exclusively responsible for repair, replacement, modification and maintenance (as needed) of all structural portions of [the Property] including all exterior asphalt located at or near the front, side and rear of [the Property]," and that South Bend has never asked any other organization to fulfill these obligations "as all matters related thereto are the responsibility of the City of South Bend, Indiana, as the owner of said premises." Appendix to Brief of Appellee, [NNRO] at 18-50. In addition, the employees' affidavits include statements concerning the one-year lease between South Bend and NNRO from 2002 and 2003, and NNRO attached a copy of the lease to each affidavit.

4

Affidavits in support of summary judgment motions "shall set forth such facts as would be admissible in evidence." Trial Rule 56(E). The Colemans argue the affidavits are inadmissible because witnesses are prohibited from testifying as to legal conclusions and the statement that South Bend has been exclusively responsible for maintenance and repair of the Property is a legal conclusion. See Evidence Rule 704(b). The Colemans also assert that any statements regarding the expired lease are irrelevant and thus inadmissible. We disagree with both arguments. The statements of each employee concerning South Bend's responsibility for the Property are not legal conclusions. They are statements regarding the relationship between South Bend and all other parties associated with the Property. Specifically, the affidavits state that South Bend, rather than anyone else associated with the Property, assumed the responsibilities of repairing and maintaining the Property. These statements are facts from which legal conclusions can be drawn, but they are not legal conclusions on their own. Also, statements regarding the lease are not irrelevant. Although NNRO does not appear to have been a holdover tenant since it did not physically remain on the premises,[2] the lease, even if expired, gives historical context to the relationships and responsibilities of the parties associated with the Property when Fletcher fell in 2008. Thus, the trial court did not abuse its discretion.

---

[2] See Houston v. Booher, 647 N.E.2d 16, 19 (Ind. Ct. App. 1995) ("In the absence of an agreement to the contrary, when a tenant holds over beyond the expiration of the lease and continues to make rental payments, and the lessor does not treat the tenant as a trespasser by evicting him, the parties are deemed to have continued the tenancy under the terms of the expired ease.").

### III. Summary Judgment

In a negligence action the plaintiff must prove three elements to prevail: 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty of care; and 3) injury to the plaintiff proximately caused by the breach of duty. Sizemore v. Templeton Oil Co., Inc., 724 N.E.2d 647, 650 (Ind. Ct. App. 2000). Whether a duty exists is a question of law for the court to decide. Id. "In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004). In Risk v. Schilling, 569 N.E.2d 646, 647 (Ind. 1991), in determining whether an owner of property had a duty to exercise reasonable care, our supreme court focused on whether the owner was a "possessor" of the area where injury occurred and cited the Restatement Second of Torts for the definition of "possessor":

> A possessor of land is
> (a) a person who is in occupation of the land with intent to control it or
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328 E (1965).

The Colemans argue whether or not NENC and/or NNRO owed Fletcher a duty, i.e. whether either organization was "in control of the premises when the accident occurred," are

6

genuine questions of material fact. As to NENC, the Colemans rely upon the following facts in support of their contention that NENC owed a duty to Fletcher: NENC occupies the first floor and basement of the Property for the use of its food pantry; NENC conducts meetings and hosts other activities in the building; NENC has keys to the Property; volunteers of NENC have access to keys to the Property; NENC pays for the telephone line for the Property; NENC volunteers assist in the maintenance of the parking area and sidewalk in front of the building; NENC designates the hours of the food pantry, where clients park, and which doors are for public use to enter the building; and NENC volunteers have at times swept away broken pieces of asphalt and/or concrete from the front of the building where Fletcher fell. As to NNRO, the Colemans rely upon the following facts in support of their contention that NNRO owed a duty: NNRO pays the utility bills for the Property; NNRO pays the janitor of the building; NNRO has keys to the Property; NNRO hires someone to cut the grass and remove snow, including removal from the area in front of the building where Fletcher fell; NNRO pays for the security system for the Property; and the janitor of the Property, paid by NNRO, has at times removed broken pieces of asphalt and/or concrete from the front of the building.

NENC argues that, at best, it occupied the first floor and basement of the Property. It contends it had no control over the building's exterior or the surrounding parking and walking areas. In response to the Colemans' contention that NENC was a possessor of the Property, as defined by the Restatement Second of Torts, NENC argues South Bend gave NENC a license to use the property for its community service purposes and that NENC was

7

nothing more than a licensee. In support of its argument, NENC points to the affidavits of South Bend employees who all assert that South Bend had the exclusive responsibility for the repair and maintenance of the exterior of the Property.

Similarly, NNRO argues it did not exhibit any control over the Property, let alone sufficient control to be deemed a possessor of the Property. In support of its contention, NNRO points to the facts that it was not the owner of the Property, did not use the Property, is not a leaseholder, never made structural repairs to the building or premises, and was never given authority to make repairs by South Bend. Although NNRO paid for the janitor, snow removal, lawn care, utilities, and security system for the Property, NNRO asserts this amounts to nothing more than financially supporting the food pantry.

The Colemans claim Risk is applicable. There, our supreme court determined the owner of property which caused an injury was not the possessor of the property because the owner exhibited no control over it. 569 N.E.2d at 647-48. Unlike Risk, however, here we have evidence that South Bend did exercise control over the Property and the area where Fletcher fell. Namely, four employees of South Bend averred that South Bend maintained exclusive responsibility for structural repairs and maintenance to the Property, including all exterior asphalt around the building. The Colemans also refer us to our reasoning in Reed v. Beachy Const. Corp., 781 N.E.2d 1145, 1150 (Ind. Ct. App. 2002), trans. denied, where we held that the new owners of a home who delayed possession of the premises so that it could be included in a home show did not owe a duty to patrons touring their newly purchased home during the show. Unlike Reed, where the owners of the property exhibited no control

8

other than ownership, here the evidence reveals South Bend controlled the Property and the asphalt surrounding it because it maintained exclusive responsibility for its repair and maintenance.

We conclude there is no genuine issue of material fact regarding whether NENC or NNRO exercise sufficient control over the exterior walkway of the Property to give rise to a duty of care. Evidence of the obligations and responsibilities assumed by each party includes the affidavits of several South Bend employees stating that South Bend is and has been exclusively responsible for the repair, replacement, modification, and maintenance of the Property's structure, including the walkway on which Fletcher fell, and that South Bend has never requested that another organization take on any of those responsibilities.

Further evidence includes the lease between South Bend and NNRO from when NNRO leased the Property in 2002 and 2003. Even if NNRO is no longer a tenant and the lease no longer binding,[3] the lease does discuss the obligations of each party. While the lease may not govern in these circumstances, it does provide insight into the assumed role of South Bend with respect to the Property:

> 5. . . . [NNRO] will keep the interior of the leased premises in good repair, and will keep the premises in a clean and healthy condition during the term of this lease. . . . [South Bend] shall repair and maintain the structural portion of the premises, including, but not limited to, the basic plumbing, air conditioning, heating, and electrical systems unless such maintenance or repairs are caused by the act, neglect, fault or omission of [NNRO].

Appellants' Appendix at 89-90. At the very least, the lease provides evidence that during its lease with NNRO, South Bend assumed responsibility for the structural integrity of the

---

[3] See supra note 2.

Property.  Nothing presented by the Colemans shows that South Bend has taken any less responsibility or given anyone else more responsibility since the time of the lease.

As to the courses of action of NENC and NNRO, which the Colemans rely upon in their contention that both organizations were in control of the Property, the actions of NENC amount to nothing more than the use of the Property and the actions of NNRO amount to nothing more than financially supporting the food pantry.  These actions do not show that either organization was in control of the Property and the area in front of the building where Fletcher fell.  Because loss of consortium claims are derivative in nature, see Bender v. Peay, 433 N.E.2d 788, 790 (Ind. Ct. App. 1982), and because NENC and NNRO are entitled to judgment as a matter of law as to Fletcher's negligence claim, Dorothy's loss of consortium claim also fails.

### Conclusion

We conclude the trial court did not abuse its discretion in denying the Colemans' motion to strike portions of NNRO's affidavits, no genuine issues of material fact exist, and NENC and NNRO are entitled to judgment as a matter of law.  We therefore affirm.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.