**IN RE CARBIDE INDUSTRIES, LLC, Debtor.**

**Carbide Industries, LLC, Plaintiff,**

**v.**

**Lecessee Construction Services, LLC, Defendant.**

Case No. 6:14–bk–09894–KSJ
Adversary No. 6:15–ap–00159–KSJ

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Filed 11/10/2016

Peter N. Hill, Herron Hill Law Group, PLLC, Ruben Laboy, Ruben Laboy, Jr., Thomas Neal, Orlando, FL, for Plaintiff.

James D. Dati, Bond, Schoeneck & King, PLLC, Naples, FL, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II

Karen S. Jennemann, United States Bankruptcy Judge

Defendant, Lecessee Construction Services, LLC, seeks dismissal of Count II

asserted by the Plaintiff/ Reorganized Debtor, Carbide Industries, to foreclose a perfected claim of lien against a surety bond. Defendant's Motion to Dismiss Count II is denied.

In this adversary proceeding, Carbide Industries alleges that Lecessee Construction Services owes it money for work performed under a contract between the parties. Carbide recorded a "Sworn Statement and Notice of Intention to Hold Mechanic's Lien of Carbide Industries, LLC" on the basis of this contract in Hamilton County, Indiana.[1] The following facts are undisputed:

- **November 22, 2013**: Carbide's Mechanic's Lien was recorded.[2]
- **May 1, 2014**: Lecessee caused the mechanic's lien to be transferred to a surety bond.[3]
- **August 28, 2014**: Carbide filed its Chapter 11 petition.[4]
- **June 29, 2015**: The effective date of Carbide's Final Chapter 11 Confirmed Plan.[5]
- **November 20, 2015**: This Adversary Proceeding was filed.[6]

The relevant Count II seeks to foreclose upon this surety bond.[7] Plaintiff, Carbide, contends that they substantially performed all statutory provisions under Indiana's mechanic's lien law and demands judgment enforcing the mechanic's lien against the Surety Bond and attorneys' fees and costs.[8] Defendant, Lecessee, filed a Motion to Dismiss Count II arguing the claim is untimely.

Lecessee makes two primary arguments for dismissal: (1) the extension of time of Bankruptcy Code § 108 does not apply to "post-confirmation" debtors; and (2) under Indiana Code (the "IC") 32–28–3–6, Carbide had to foreclose on its mechanic's lien within one year of its creation—November 22, 2014.[9] Carbide responds that (1) the extension of time of the Bankruptcy Code § 108 applies to a reorganized Chapter 11 debtor when the debtor was formerly a debtor-in-possession; and (2) Carbide met the requirements under IC 32–28–3–6 because a surety bond can be a credit and it is unknown if the credit expired.[10]

Rule 12(b)(6) provides that before an answer is filed a defendant may seek dismissal of a complaint if the complaint fails to state a claim.[11] Disposition of a motion to dismiss under Rule 12(b)(6) focuses only upon the allegations in the complaint and whether those allegations state a claim for relief. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12] For a complaint to survive a motion to dismiss, it

---

1. Doc. No. 41–4, p. 2.

2. Doc. No. 41–4, p. 6.

3. Doc. No. 41–5.

4. Main Case 6:14–bk–09894–KSJ, Carbide Industries, LLC, Doc. No. 1.

5. Doc. No. 16–1, p. 7.

6. Doc. No. 1.

7. Doc. No. 41, p. 4.

8. *See generally* Doc. No. 41, p. 5.

9. Doc. No. 47, p. 4–12.

10. Doc. No. 53, p. 3–7.

11. Fed. R. Civ. P. 12(b)(6).

12. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations omitted).

must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[13] Facial plausibility is present "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] Likewise, a 12(b)(6) dismissal "is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'"[15] In reviewing a motion to dismiss, courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[16]

■ Lecessee first argues that, although Bankruptcy Code § 108(a) extends deadlines giving a debtor-in-possession or a trustee an additional two years to sue,[17] the section does not apply to post-confirmation debtors, like Carbide, *unless* the confirmed plan specifically reserves prosecution for the benefit of the estate.[18] The purpose § 108(a) is to "benefit the creditors of the bankrupt debtor, rather than a mere debtor itself."[19]

■ Here, the effective date of Carbide's confirmed plan was June 29, 2015. This adversary proceeding was filed on November 20, 2015, when Carbide no longer was a debtor-in-possession. Carbide's Confirmed Plan of Reorganization did not provide that recoveries from any adversary proceedings would fund the estate post-confirmation.[20] The Confirmed Plan states the opposite—"all property shall revest in the Debtor on the Effective Date."[21] When Carbide filed this adversary proceeding, it was no longer a debtor-in-possession acting for the benefit of the entire estate and its creditors,[22] but rather a reorganized debtor who is acting in its own interests. Carbide cannot rely on § 108(a) for an extension of time to file this adversary proceeding.

Indiana law, however, still may allow Carbide to prosecute Count II with no extension. Under IC 32–28–3–6, a "complaint must be filed not later than one (1) year after: (1) the ... notice of intention to hold a lien was recorded ... or (2) subject to subsection (c), the expiration of

13. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955) (internal quotation marks omitted).

14. *Id.*

15. *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (quoting *La Grasta v. First Union Sec. Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

16. *Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015) (quoting *Piedmont Office Realty Trust, Inc. v. XL Speciality Ins. Co.*, 769 F.3d 1291, 1293 (11th Cir. 2014) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003))).

17. *Roberts v. C.I.R.*, 175 F.3d 889, 897 (11th Cir. 1999); *Also see* 11 U.S.C § 1107 (2012); *Matter of Roberson*, 53 B.R. 37, 39 (Bankr. M.D. Fla. 1985).

18. *Nat'l Envtl. Waste Corp. v. Stephens, Berg & Lasaster (In re Nat'l Envtl. Waste Corp.)*, 200 F.3d 1266, 1268 (9th Cir. 2000).

19. *Id.* at 419.

20. Carbide's Amended Disclosure Statement does provide: "such assets include claims of litigation against third parties, which is speculative." Main Case Doc. No 106, p. 5. Carbide's Confirmation Affidavit states that they "will fund the plan ... from a collection of outstanding accounts receivable." Main Case Doc. No. 131, p. 2.

21. Doc. No. 105, p. 12.

22. *Natco Industries, Inc. v. Federal Ins. Co.*, 69 B.R. 418, 419 (S.D.N.Y. 1987). *See U.S. Am. Bank v. CI.T. Const. Inc. of Texas*, 944 F.2d 253, 260 (5th Cir. 1991) ("Post-confirmation debtors are not entitled to the tolling provisions of section 108(a) because their interests diverge from those of the creditors in the estate.").

the **credit, if credit was given.**"[23] So, although this adversary proceeding was filed more than one year after Carbide's lien was created, enforcement rights may survive. The lien was transferred to a surety bond, which may act as an unexpired credit under the statute and permit the continued prosecution of Carbide's claim against Lecessee.

▮▮▮ Mechanic's lien statutes in Indiana are strictly construed in the *creation* and *existence* of such lien; however, "provisions [in the statute] relating to enforcement should be liberally construed" to give the statute effect.[24] Doubts as to the enforceability of a properly created lien are resolved in favor of a lienholder, such as Carbide.

▮▮▮ Lecessee asks this court to take a narrow interpretation of the word "credit, if credit was given" by relying on a different portion of Indiana's Code.[25] Defendant also argues that an 'undertaking' is a 'surety bond',[26] when in fact the terms are not synonymous. Under the statute, an under-

taking requires a surety in "bond, cash, or letter of credit;" wherein, the surety requires more than the original legal obligation.[27]

▮▮▮ Lecessee's argument ignores the statutory construction requirement that I must liberally construe for the *enforcement* of an already perfected mechanics lien. "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute."[28] Defendant's strict interpretation of the term 'credit' was taken from another part of the code, used in a limited context involving residential homes. The term 'credit' is not defined in the statute.[29] The term's use would eliminate all 'credits' for a mechanics lien, unless the lien was 'on credit' for a single or double family dwelling.[30]

In granting a 12(b)(6) motion, this court must construe the facts in the light most favorable to the plaintiff. Because Indiana's mechanic's lien statute must be

---

**23.** Ind. Code. § 32–28–3–6 (2016) (emphasis added).

**24.** *Deluxe Sheet Metal, Inc. v. Plymouth Plastics, Inc.*, 555 N.E.2d 1296, 1298 (1990); *accord Midwest Biohazard Servs., LLC v. Rodgers*, 893 N.E.2d 1074, 1077 (2008); *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95, 99 (Ind. Ct. App. 1995).

**25.** Defendant asks the Court to interpret 'credit' in IC § 32–28–3–6 by using IC § 32–28–3–1, entitled Mechanic's liens; persons to whom available; effect of contract provisions; credit transactions; restrictions. 'Credit' would equate to someone who purchased material, labor, or machinery "on credit" for an "owner occupied single or double family dwelling...." Ind. Code. § 32–28–3–6, Sec. 1, at (h)–(i).

**26.** Ind. Code. § 32–28–3–11.

**27.** *Bailey v. Holliday*, 806 N.E.2d 6, 10 (Ind. Ct. App. 2004) ("The surety needs to cover

any judgement, including the amount of the lien, costs, and attorney's fees.").

**28.** *Bailey*, 806 N.E.2d at 10.

**29.** Given the plain and ordinary meaning of the word 'credit', a credit is more synonymous with surety, and thus whether a credit expired under IC may be applicable. *Compare Credit, Black's Law Dictionary* (10th ed. 2014) (the faith in one's ability to pay debts, or the time that a seller gives a buyer to make payment), *with Surety, Black's Law Dictionary* (10th ed. 2014) ("someone who is primarily liable for paying another's debt"), *and Performance Bond, Black's Law Dictionary* (10th ed. 2014) ("a bond given by a surety to ensure the timely performance of contract").

**30.** *See generally John Wendt & Sons v. Edward C. Levy Co.*, 685 N.E.2d 183, 188 (Ind. Ct. App. 1997) (where the dispute was over labor and cranes for a 10–yard dredge and a conveyor system).

liberally construed to give the statute effect and in favor of the lienholder, and the statute does not define the term 'credit' or when a credit expires, the Court declines to impose the restrictive definition urged by the Defendant. Count II states a claim upon which relief can be granted and is not time barred, at least at this stage of this litigation.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. No. 47) is **DENIED.**

2. Defendant shall answer the Amended Complaint by **December 2, 2016.**

3. A pretrial conference is scheduled for **2:00 p.m. on December 15, 2016.**

ORDERED.